## VINTON PETROLEUM CO. v. SUN CO *

(Circuit Court of Appeals, Fifth Circuit. February 28, 1916.)

No. 2800.

1. SALES ☞64—OPTIONS—PRICE—CREDIT BALANCE PRICE—"CONTRACT PRICE."

A contract whereby defendant agreed to buy plaintiff's production of oil for two years gave defendant an option to renew the contract for an additional two years, the oil in such case to be paid for at a price equal to the highest contract price then in good faith being paid by any pipe line company doing business in a specified oil field. There was evidence that the price at which pipe line companies gave credit or paid for oil for which they had not contracted was commonly spoken of as the market or "credit balance price," and frequently differed from the price paid producers contracting for future delivery; but it did not appear that the words "contract price" had a technical meaning, other than their ordinary and popular meaning. When the option was exercised pipe line companies were paying $1 a barrel for oil previously contracted for, but were only offering 60 cents a barrel for oil then sold for future delivery. Held, that the price to be paid was $1 a barrel, as the words "contract price" mean a price fixed by contract, whether the contact is one previously made, governing past, contemporaneous, or future transactions, or one presently agreed upon with reference to future transactions, and a price being paid under a contract previously made was within the express language of the contract, while a price which parties were offering or willing to pay under contracts proposed to be made, but not made, was not a price then being paid.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 156; Dec. Dig. ☞64.

For other definitions, see Words and Phrases, Second Series, Contract Price.]

2. CONTRACTS ☞152—CONSTRUCTION—MEANING OF LANGUAGE USED.

To ascertain the meaning of a written agreement in which no technical word or expression is used, nothing is to be looked to except the language employed, taken in its ordinary sense, the subject-matter, and the surrounding circumstances, and the agreement cannot be given a meaning not expressed by the language used.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 732, 733, 738; Dec. Dig. ☞152.]

3. SALES ☞64—CONSTRUCTION—PRICE TO BE PAID.

By a contract defendant agreed to buy at a specified price plaintiff's production of oil up to, but not exceeding, 2,500 barrels per day for a period of two years, the contract further providing that, if the production exceeded the maximum quantity specified during the period of the contract, defendant was given the option of purchasing such additional production "at the market price at the time." Held, that oil produced at any time during the period of the contract in excess of 2,500 barrels a day was within the option to purchase at the market price, though plain-

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Rehearing denied April 18, 1906.

tiff's total production for the entire term of the contract did not exceed 2,500 barrels multiplied by the total number of days.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 156; Dec. Dig. ☞64.]

Appeal from the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Action by the Vinton Petroleum Company against the Sun Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

W. D. Gordon, of Beaumont, Tex., and Geo. E. Holland, of Orange, Tex. (Townes, Foster & Hardwicke, of Beaumont, Tex., on the brief), for appellant.

E. E. Townes and T. L. Foster, both of Beaumont, Tex., for appellee.

Before PARDEE and WALKER, Circuit Judges, and NEWMAN, District Judge.

WALKER, Circuit Judge. By a written contract made on or about December 21, 1912, by and between the appellant, the Vinton Petroleum Company, the plaintiff below, and the appellee, the Sun Company, the defendant below, the former sold and the latter bought at the price of 90 cents per barrel the former's production of oil of a specified quality from wells located on its leases in the Vinton oil field, not exceeding 2,500 barrels per day for the period of the sale; that period being two years commencing the 25th day of December, 1912. The contract contained the following provision:

"In consideration of the obligations assumed by the first party hereinabove (the appellee), said first party is to have the option to renew for an additional two years following December 24, 1914, this contract, at the expiration of said two years, the oil for said following two years to be paid for in case said option to buy the same is exercised by the Sun Company at a price to be equal to the highest contract price then and in good faith being paid by either of the pipe line companies now doing business in the Vinton oil field for similar oil in said field; notice of the exercise of said option by the said first party to be given to the second party by the first said party in writing within ten (10) days following December 25, 1914."

On January 2, 1915, the appellee exercised the option it had under the clause just quoted by giving the written notice prescribed therein.

[1] A principal controversy in the case, in which is sought the specific enforcement of the contract made by the appellee's exercise of its option, turns upon the meaning of the words, "the highest contract price then and in good faith being paid by either of the pipe line companies," etc. The contention of the appellee, which was sustained by the District Court, is that the language quoted gave to its exercise of the option the effect of obligating it to pay 60 cents per barrel for the specified oil to be produced during the additional two years; that being the highest price which the evidence showed that either of the pipe line companies doing business in the Vinton oil field was, at the date of the exercise of the option, offering or willing in good faith to pay for similar oil contracted for future delivery. The contention in behalf of the appellant is that the appellant's exercise of the op-

tion obligated it to pay $1 per barrel for the oil; the evidence showing that that was the highest contract price which, at the date of the exercise of the option, one or more of the pipe line companies operating in the Vinton oil field was paying for similar oil, that price then so being paid under a contract or contracts made prior to that time.

The court heard much evidence as to the circumstances leading up to and attending the making of the contract and as to the methods of selling and buying oil which prevail in the locality which was the scene of the transaction. It was made plain that the price at which the pipe line companies in that territory accept and give credit or pay for oil for which they have not contracted is commonly spoken of as the market or "credit balance" price, and that frequently there is quite a difference between this price and that paid or to be paid to a producer who contracts for the future delivery of oil. There, is a recognized distinction between a "credit balance" price and a contract price; but nothing in the evidence furnishes any support for the conclusion that the words "contract price," when used in dealings in the oil business, have a technical meaning or are to be taken in any other than their ordinary and popular sense. The words mean a price fixed by contract, whether the contract is one previously made, governing past, contemporaneous, or future transactions, or is one presently agreed upon with reference to future transactions. They are used as aptly to describe what at a given time is paid or becomes payable pursuant to a contract previously made as to describe what is then contracted to be paid for future deliveries. If at the time of the expiration of the first two years period named in the contract $1 per barrel was in good faith, under a contract previously made, being paid for similar oil by either of the pipe line companies which was doing business in the Vinton oil field when the contract was made, and that was the highest price fixed by contract which then was so being paid by such a company, then a conclusion that the appellee's exercise of the option obligated it to pay less than $1 a barrel for the oil contracted for during the additional two years must be supported otherwise than by giving to the option provision the meaning which its words express. A price which one at a given time offers or is willing to pay under a contract proposed to be made, but not made, is not a "price then and in good faith being paid." The substitution of other language for that actually used is required to describe a price then merely offered or proposed to be paid. The language of the agreement is not contradictory, obscure, or ambiguous. Giving to the words used their plain and ordinary signification, the meaning is not doubtful. The provision as to the price to govern in the event of the exercise of the option is not fairly susceptible of both the two constructions for which the opposing parties respectively contend. The rule which would be applicable if that was the case does not apply. A. Leschen & Sons Rope Co. v. Mayflower G. M. & R. Co., 173 Fed. 855, 97 C. C. A. 465, 35 L. R. A. (N. S.) 1.

[2] To adopt the construction contended for on behalf of the appellee would require giving to the agreement a meaning not expressed

by the language used. This is not permissible. To ascertain the meaning of a written agreement in which no technical word or expression is used, nothing is to be looked to except the language employed, taken in its ordinary sense, the subject-matter, and the surrounding circumstances. Moran v. Prather, 23 Wall. 492, 23 L. Ed. 121. It is argued that the correctness of the interpretation of the provision which is insisted on in behalf of the appellant is impeached, because the result of adopting that interpretation is to make the agreement such an unusual, unreasonable, or improbable one as to suggest that the parties could not have intended the language they used to have that effect. We find nothing in the subject-matter or in the circumstances attending the making of the contract to warrant the conclusion that the agreement, if the language expressing it is taken in its plain and ordinary signification, was an inequitable one so far as the appellee was concerned, and such a one as reasonable men might be expected to refrain from making. The contention of the counsel for the appellee is indicated by the following statements made in their brief:

"To adopt such an interpretation is to force the Sun Company to pay for the oil 40 cents per barrel more than the highest contract price was at the time the renewal took effect. * * * To so construe the contract that the Sun Company can renew the same by paying the highest contract price being currently offered at the time makes the contract reasonable and one that prudent men would naturally enter into. To construe it as counsel for appellant wants it construed, and thereby establish for a price standard something that had no relation whatever to the conditions existing at the time of the renewal, would make a contract that cautious and prudent men would naturally not be expected to make."

This argument leaves out of view the fact that the provision in question gave the appellee an option which it was at liberty to exercise or to refrain from exercising. It was left free to cease to buy appellant's oil at the end of the original two years, if the highest price then in good faith being paid by either of the pipe line companies in that territory was more than it then was willing to obligate itself to pay for the appellant's production of oil during the succeeding two years. It cannot be said that it was lacking in prudence in acquiring such a mere privilege, involving no consequences which it might not readily avoid by electing not to renew the contract. Certainly it is not more unlikely that the appellee intended to acquire the option which the language of the provision gave it than that the appellant, when the contract was made in December, 1912, consented to bind itself to sell, to a party not bound to buy, its production of oil during an additional term of years, at the highest price that either of the two or three pipe line companies operating in the Vinton oil field might, at a date then two years in the future, be offering or willing to pay for similar oil under contract, whether that price did or did not have any takers, and though it was so low that no producer was willing to accept it for oil contracted for future delivery. The conclusion is that the plain language used in the provision in question has the meaning for which the appellant contends, and did not have the effect which was given to it by the decree appealed from.

[3] Another controversy in the case is as to the meaning of the

following provisions of the contract which was renewed by the appellee's exercise of its option:

"And the amount of oil bought and sold hereunder shall consist of all of second party's production during the period herein named from said wells up to, but not exceeding, 2,500 barrels per day for the period of this sale. * * * In consideration of the first party's obligations herein undertaken, should second party's oil from said production exceed the maximum quantity above specified, during the period of this contract, first party is hereby given the option of purchasing such additional production at the market price at the time."

It is contended in behalf of the appellant that the contract price applied to all oil produced during the two years period of either the original or the renewal contract, if the production for the entire period did not average more than 2,500 barrels per day; in other words, that there was no excess production to which the last-stated option provision and the market price were applicable, if the total production for the entire term of the contract did not exceed 2,500 barrels multiplied by the number of days in two years. We are not of opinion that this contention is sustainable. The result of adopting it would be to make the amount of oil bought and sold what it would have been if the contract had stated it to be the production during the period named "up to, but not exceeding, an average of 2,500 barrels per day for the period of this sale." Whatever doubt there might have been as to what was intended by the words "but not to exceed 2,500 barrels per day for the period of this sale," if the contract had contained no other provision indicative of the intention of the parties as to the amount of oil deliverable at the contract price, we think was dispelled by the other provision, which gave to the appellee the option to purchase "at the market price at the time" appellant's production in excess of "the maximum quantity above specified," whenever "during the period of this contract" the production exceeded the maximum quantity stated. The language used indicates that the understanding was that a production, at any time during the period of the contract, of more than 2,500 barrels a day, would be an "additional production" not embraced in the sale made. It well may be inferred that different language would have been used if the understanding had been that more than 2,500 barrels a day was in any event to be deliverable at the contract price, though the previous average daily production might have been less than the maximum stated, or that the option provision was not to come into play until the purchaser had received the total amount of oil which in any event could be a subject of the sale at the contract price. The two provisions, considered together, manifest a purpose to make the contract price inapplicable to so much of the appellant's production as at any time during the period of the contract may be in excess of 2,500 barrels a day, and to make the option to buy "at the market price at the time" applicable whenever there may be a daily production in excess of that quantity.

As to the last-considered feature of the contract, the decree appealed from is in harmony with the conclusion just stated. Because

of the effect it gave to the provision of the contract first above mentioned, that decree is reversed, and the cause is remanded for further proceedings not inconsistent with the conclusions above stated.