## SUN CO. et al. v. VINTON PETROLEUM CO.

(Circuit Court of Appeals, Fifth Circuit. February 15, 1918. Rehearing Denied March 23, 1918.)

No. 3039.

1. APPEAL AND ERROR ⟨key⟩847(1)—REVIEW—EQUITY CASES.

An appeal in an equity case brings the entire case before the appellate court for review.

2. APPEAL AND ERROR ⟨key⟩1078(1)—ISSUES—WAIVER.

A party's failure to urge an issue in the appellate court is a waiver thereof.

3. APPEAL AND ERROR ⟨key⟩1096(3)—DETERMINATION—REMAND.

Where a decree for defendant was on complainant's appeal reversed, defendant, not having urged in the appellate court that the decree in its favor was proper under its cross-demand for reformation of a written instrument, cannot complain, on appeal from a subsequent decree for complainant, that the trial court refused to consider its cross-demand, for, as the question could have been raised on the first appeal, defendant is concluded, as questions brought before an appellate court cannot, on subsequent appeal, be again insisted on.

4. APPEAL AND ERROR ⟨key⟩1071(6)—REVIEW—HARMLESS ERROR.

Where, under the evidence, defendant's cross-demand would have been denied, had it been considered, the refusal of the trial court to consider the same is not prejudicial, if erroneous.

5. REFORMATION OF INSTRUMENTS ⟨key⟩19(1)—MISTAKE—MUTUAL MISTAKE.

Where defendant sought reformation of an option contract on the ground of mistake, it must show that the contract did not express the meaning which the parties understood was to be expressed, and also that the mistake was mutual.

6. REFORMATION OF INSTRUMENTS ⟨key⟩45(1)—EVIDENCE—SUFFICIENCY.

Where an alleged mistake is denied, reformation of a written instrument should not be decreed, except on evidence of the clearest and most satisfactory character.

7. REFORMATION OF INSTRUMENTS ⟨key⟩45(2)—EVIDENCE—SUFFICIENCY.

Where defendant claimed reformation of an option contract on the ground of mistake, evidence *held* insufficient to establish the mistake, or that the mistake, if it existed, was mutual.

Batts, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

Bill by the Vinton Petroleum Company against the Sun Company and others. From a decree for complainant, defendants appeal. Affirmed.

---

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. E. Townes, of Houston, Tex., T. L. Foster, of Beaumont, Tex., and Alex W. Smith, of Atlanta, Ga., for appellants.

W. D. Gordon and Henry G. Russell, both of Beaumont, Tex., and A. P. Pujo, of Lake Charles, La., for appellee.

Before PARDEE, WALKER, and BATTS, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from a decree rendered after the reversal by this court, on an appeal by the plaintiff, the appellee in the present appeal, of a former decree, and the remandment of the cause. Vinton Petroleum Co. v. Sun Co., 230 Fed. 105, 144 C. C. A. 403. There was no change in either the pleadings or the evidence in the case after it went back to the trial court. What the appellant, the defendant below (and which will be called the defendant), now complains of, is the refusal of the trial court, when the case came before it again as a result of the reversal and remandment by this court, to consider and pass on that part of the defendant's answer to the bill which prayed that the option clause of the contract between the parties of December 21, 1912, be reformed, and alleged, in support of the prayer for such relief, that before that contract was reduced to writing it was mutually agreed between the parties that the price at which the defendant was to have the option of renewing the contract for the plaintiff's production of oil for an additional two years following December 24, 1914, was to be equal to the highest price which either of the pipe line companies doing business in the Vinton oil field when the original contract was made was, on or about December 24, 1914, in good faith contracting to pay or offering by contract to pay for oil in said field, but that by mutual mistake in the choice of words and in reducing the contract to writing the contract failed to clearly express the intention and meaning of the parties which had actually been agreed on before the contract was written, and which they thought and believed the writing expressed. It is pointed out by counsel for the defendant that the claim asserted by the bill was resisted on two grounds, namely: (1) That the contract as it was written did not have the meaning attributed to it by the bill; and (2) that if, as it was written, it had that meaning, such a mutual mistake was made in reducing it to writing as to entitle the defendant to have it reformed, and that the trial court, by the decree which was reversed, sustained the first-mentioned ground of defense and made no disposition of the other one. And, based upon the fact that in the opinion rendered by this court on the former appeal nothing was said about the claim made by the defendant in its answer that the option provision, the exercise of which was sued on, should be reformed, the contention is made that the former action of this court left that issue undisposed of and subject to be presented anew to the trial court.

[1-3] In the opinion of the writer the last-mentioned contention is not sustainable. Under the well-settled rule that an appeal in an equity case brings the entire case before the appellate court, the issue raised by the defendant's answer and the evidence adduced to support it as to its right to have the option feature of the contract so

reformed as to make it express the agreement which it was alleged the parties made before they undertook to reduce it to writing was before this court when the case was here on a former appeal. · It was as open to the party opposed to the reversal of that decree to resist a reversal of it on the ground that the evidence supported its cross-demand for a reformation of the option provision of the contract as it was to resist reversal on the ground that the meaning for which it contended was expressed by the contract as it was written. If the issue as to the suggested reformation of the option clause of the contract had been insisted on by the defendant when the case was here on the former appeal, the ruling which this court then made could not properly have been made without deciding that issue against the defendant. A party may abandon an issue by failing to insist on it. It seems that this is what the defendant did by failing to urge in this court, when the case was here on the former appeal, that the decree then under review should be sustained because the evidence supported the claim, set up by the defendant's answer, that the option provision of the contract should be reformed. It is not at all uncommon for a court's opinion to omit any mention of an issue raised by the pleadings and evidence in the case under consideration, but which is not insisted on by the party by whom that issue was tendered. The writer understands that questions which by an appeal have been brought before an appellate court for its decision cannot again be insisted on when the case comes before the same court on a subsequent appeal; that a party cannot create an exception to this rule by calling to the attention of the appellate court, when the case is first before it, some only of the questions which the record presents for its decision, reserving other questions, also presented by the record, for a second presentation to the trial court in the event of the remandment of the case to it, or to the same appellate court on a subsequent appeal; and that a subsequent appeal brings up nothing but the proceedings subsequent to the mandate. Illinois v. Illinois Central Ry. Co., 184 U. S. 77, 22 Sup. Ct. 300, 46 L. Ed. 440; United States v. Camou, 184 U. S. 572, 22 Sup. Ct. 505, 46 L. Ed. 694; Smith v. Vulcan Iron Works, 165 U. S. 518, 17 Sup. Ct. 407, 41 L. Ed. 810. As was said in the opinion in the first-cited case:

"To allow a second writ * * * or appeal to a court of last resort on the same questions which were open to dispute on the first would lead to endless litigation."

The propositions just stated are not controverted by the decisions in the cases of Mutual Life Insurance Co. v. Hill, 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788; and In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. 291, 40 L. Ed. 414. The questions which in those two cases were held to have been open to decision in the trial court after a remandment by the appellate court had not been raised when the cases were first in the appellate court, but were first raised by proceedings in the trial court subsequent to the mandates. Expressions made use of in the opinions in those cases are to be read in the light of this fact. It seems to the writer that this court's former de-

cree disposed of the issues raised by the pleadings and evidence as disclosed by the record then before it, as well the one which was waived by not being urged for consideration, when it was open to the defendant to do so if it chose, as the one which was argued by counsel and was discussed in the court's opinion.

[4] But, if the record discloses that the result must have been the same if the action which is complained of had not been taken, it may be assumed, without being conceded or decided, that when the case went back to the trial court the demand asserted by the bill could not properly have been maintained, if the evidence which had been adduced was such as to support the claim set up by the defendant that it was entitled to have the option provision of the contract reformed pursuant to the prayer contained in its answer. The defendant could not have been prejudiced by the refusal of the trial court, when the case was last before it, to pass on an issue it had tendered, if the record discloses that the evidence which it had to rely on to support that issue was insufficient for that purpose.

[5-7] By a written contract between the plaintiff and the defendant dated December 21, 1912, the former sold and the latter bought the former's production of oil during the period of two years commencing December 25, 1912. What is sought to be reformed is a clause contained in that contract which gave the defendant the option of renewing the contract for an additional two years following December 24, 1914. On January 2, 1915, the defendant exercised the option in the way prescribed in the option provision as it was written, without suggesting that the option it was entitled to exercise was in any way different from what the writing showed it to be. So far as the record discloses, the first suggestion that the option which the parties agreed on was not truly expressed in the writing was made by the defendant in its answer, filed April 10, 1915, to the bill in this case. It may be inferred that in the circumstances existing on January 2, 1915, the defendant would not have exercised the option, if it had then understood or believed that the option provision contained in the written contract had the meaning which this court has decided was expressed in the provision as it was written. So it is disclosed that the defendant did not seek a reformation of the option provision as it was written until after its exercise of the option had made it of vital importance to it to sustain the contention that the option for which it really contracted was not correctly stated in the written instrument which evidenced the contract. If at any time both the parties to the contract understood that the option provision which they agreed on was different from the one expressed in the writing, certainly it was not made to appear that that mutual understanding existed when the option was exercised. The defendant's exercise of the option, shown by the written communication, dated January 2, 1915, was not preceded by any negotiations or verbal communications between its representatives and those of the plaintiff; and in the reply promptly made to the notice given by the defendant of its election to exercise the option it was clearly disclosed that the plaintiff relied on the writing as truly stating the con-

tract, and that it gave the option provision the meaning which this court has decided was expressed by its language.

The defendant cannot sustain its claim that it is entitled to have the option provision as it was written reformed, without showing that before the instrument of December 21, 1912, was signed the parties had verbally agreed on the option provision alleged in the answer, and that each of the parties signed the written instrument under the mistaken belief that it correctly stated the substantially different previously made verbal agreement. It was incumbent on the defendant to prove that before the written instrument was signed the alleged different provision which is sought to be substituted in the place of the one found in that instrument was verbally agreed on by the parties, each acting through a representative or representatives authorized to bind it. The negotiations which led up to the making of the contract between the two companies were conducted by J. Edgar Pew, who had charge of the defendant's business, and J. M. Abbott, who at that time was not an officer or agent of the plaintiff company, and, so far as appears, was without authority to bind it, but who a short time before had acquired stock in that company, and in that way was interested in its making a contract for the sale of its production of oil. It was distinctly made to appear that what Abbott did in behalf of the plaintiff company was to make a preliminary arrangement, which was subject to be rejected or confirmed by the plaintiff's board of directors. The two individuals mentioned agreed on the terms of a contract to be made by and between the two companies. A draft of the proposed contract was made by an agent or official of the defendant company on a printed form of contract which had been prepared by Mr. Pew and the attorney of the defendant company several years before, which form had been used frequently by the defendant in the conduct of its business. There was evidence tending to prove that Dr. Brown and W. H. Stark, directors of the plaintiff company, were present at an interview in Mr. Pew's office in the afternoon of the same day during the evening of which the contract as it was written was approved by the plaintiff's board of directors and signed by its president. During that interview the use of the term "market price" in the proposed option provision was discussed, with the result that those words were discarded, and it was agreed to use the language found in the contract as it was written and signed, namely:

"A price equal to the highest contract price then and in good faith being paid by either of the pipe line companies now doing business in the Vinton oil field for similar oil in said field."

There was no testimony which would support a finding that in the interview just mentioned anything was said from which it could be inferred that the minds of the negotiators met in an agreement that what the defendant was to pay, in the event of its exercise of the option stipulated for, was to be determined by what any pipe line company was at that time contracting or offering to pay for oil. The option provision, as it is found in the written instrument evidencing the contract, was either dictated by the defendant's attorney, an experienced

and capable lawyer, òr was examined and approved by him. It is not explained how it happened that such a lawyer could have approved the option provision as it was written, if he had been informed that what his client's representative had assented to was a distinctly different provision. The option provision found in the written instrument evidencing the contract remained just as it was when the draft of the proposed contract was presented to the plaintiff's board of directors for its approval or rejection. Four witnesses testified as to what occurred on that occasion; Mr. Pew and Mr. Abbott, who were examined in behalf of the defendant, and Dr. Brown and Mr. Stark, who were examined in behalf of the plaintiff. The testimony of no one of these witnesses indicates that on that occasion the option provision was verbally mentioned or discussed, except that Mr. Pew stated that he thought that the question of the option came up again on that occasion, and that he was not sure whether it was Mr. Gordon, who was a director of the plaintiff and its attorney, or Mr. Bankenstein, who was a director of the plaintiff, that raised the question, and that he thought that Mr. Gordon ruled that the price that the pipe line companies were paying for oil at that time would sufficiently protect them. Mr. Abbott, who at the time he testified was not connected with the plaintiff and had no financial interest in it, testified that he had no recollection of anything being said on that occasion about what the option provision meant. Dr. Brown and Mr. Stark testified that on that occasion nothing was said about the option provision.

In the course of the direct examination of Mr. Pew he stated in effect that the verbal agreement was that the Sun Company, if it exercised its option to buy the Vinton Petroleum Company's oil for an additional two years, would have to do so at the highest price that would be offered by any one else. This was a statement of the opinion or conclusion of the witness as to the meaning of what was said and assented to in discussions or conversations between the negotiators before the written instrument evidencing the contract was signed. He did not detail or narrate any previous conversation or statement which would support the conclusion that the negotiators agreed on an option provision different from the one which the signed written instrument contains. Besides, it may be inferred that this witness would have had the same opinion as to the meaning of the option provision which he claims was verbally agreed on by him and Mr. Abbott, if the oral statement of what that provision was to be had been in the identical language which was used in the provision as it was written, as it was brought out in the course of the examination of this witness that he construed that provision as it was written to mean that, if the Sun Company exercised the option, the effect of its doing so was to obligate it to pay the highest price being offered on contracts at that time by either of the pipe line companies doing business in the Vinton oil field for similar oil in that field.

We think that the evidence adduced was wholly insufficient to warrant the granting of the relief which the defendant prayed for. Proof to establish a mistake in a written contract is to be received with great caution, and, where the alleged mistake is denied, should

never be made the foundation of a decree variant from the written contract, except it be of the clearest and most satisfactory character, sufficiently cogent to satisfy the mind of the court that the writing does not express what was intended by the parties, not merely the one who seeks a reformation, and what it was they intended the writing should express.    Snell v. Insurance Company, 98 U. S. 85, 25 L. Ed. 52; Simmons Creek Coal Co. v. Doran, 142 U. S. 417, 12 Sup. Ct. 239, 35 L. Ed. 1063; Travelers' Insurance Co. v. Henderson, 69 Fed. 762, 16 C. C. A. 390; Hertzler v. Stevens, 119 Ala. 333, 24 South. 521. In the opinion rendered in the case of Travelers' Insurance Co. v. Henderson, supra, the following was said:

"The rule referred to is so well settled that it may be safely asserted that a court of equity has no right to correct an alleged mistake in a written agreement, on the strength of testimony purely oral, if the testimony is to such extent uncertain, equivocal, or contradictory as to leave the fact of mistake open to doubt.  Moreover, a court of equity ought to be especially cautious in altering the provisions of a written contract where it has been in force for a considerable period before an attempt is made to reform it, and the parties thereto have in the meantime had ample opportunity to become acquainted with its provisions, and an event has also occurred which renders a change in the terms of the contract of vital importance to the person who is seeking to reform the instrument."

The evidence in the instant case by no means clearly and satisfactorily proves that the two men who conducted the negotiations which led to the framing of a proposition for a contract to be submitted to the plaintiff's board of directors for its adoption or rejection mutually agreed that the option provision which the proposed contract was to contain was to be the one which the defendant seeks to have substituted for the one found in the written instrument which was adopted and signed.  But, even if the minds of those two men met on the proposition that the option provision was to be the one which the defendant alleges was verbally agreed on, that was not enough to entitle the defendant to the relief it seeks.  There was no contract, either verbal or written, which bound the plaintiff until it was assented to by the plaintiff, which acted in the matter through its board of directors.  There was an entire absence of evidence to support the conclusion that the plaintiff's directors ever at any time or in any way assented or agreed to an option provision different from the one contained in the written instrument, which they approved and authorized the plaintiff's president to sign.  Even though the defendant's representative signed that instrument under the mistaken belief that the option provision it contained had a meaning different from that expressed by its language, it was not entitled to have that provision reformed, unless it proved that the other party to the contract labored under the same mistaken belief when it signed that instrument.  Certainly this was not shown by that measure and character of proof which is required in such a case.  To say the least, the requisite mutuality of the alleged mistake was not proved.  The effect of granting the relief prayed for would be to incorporate into the contract made by the parties a provision which the party resisting the granting of that relief is not shown ever to have agreed to.

The conclusion is that the record shows that the defendant was not legally prejudiced by the action of the trial court of which it complains.

The decree appealed from is affirmed.

BATTS, Circuit Judge (dissenting). I cannot concur in the judgment of affirmance entered herein. The Sun Company and the Vinton Petroleum Company, on December 21, 1912, entered into a contract, to continue for two years, for the sale of the oil production of the Vinton Company. A provision of the contract was:

"In consideration of the obligations assumed by the first party hereinbefore [Sun Company] said first party is to have the option to renew for an additional two years following December 24, 1914, this contract at the expiration of said two years, the oil for said following two years to be paid for in case said option to buy the same is exercised by the Sun Company at a price to be equal to the highest contract price then and in good faith being paid by either of the pipe line companies doing business in the Vinton oil field for similar oil in said field; notice of the exercise of said option by the said first party to be given to the second party by the said first party in writing within ten days following December 25, 1914."

On January 2, 1915, the Sun Company addressed a letter to the Vinton Company, advising the latter that it elected to exercise the option, and quoting from the contract the provision with reference to the price, followed with the statement:

"We understand that the price being offered by the companies named is approximately 45 cents. If we are mistaken in this, and you have bona fide offers from them as provided in the contract for a higher price, we will be pleased to go over the offers with you and determine definitely what the price should be."

A letter from the Vinton Company, acknowledging receipt of the notice, contained a paragraph to this effect:

"We beg to call your attention to the fact that, as a basis for the price established, your contract with the Gum Cove Company, which we understand is $1, and we understand there are several other contract prices now in good faith being paid at $1."

On the 25th of January following the Vinton Company filed its bill of complaint in the United States District Court for the Eastern District of Texas, setting up the contract aforesaid and the correspondence between the parties, alleged the difference between the construction given to the contract by the Sun Company, and its insistence that the price to be paid was 60 cents per barrel, and its own construction of the contract and contention that the price was $1, alleged an additional difference of construction which is not material to the present controversy, and asked for a specific performance of the contract, as construed by complainants, and for an accounting.

The defendant answered that:

"Under the terms of the contract, the price to be paid "for said oil so delivered under said contract is to be determined by ascertaining the highest contract price being in good faith offered or contracted on or about December 24, 1914, to be paid for a production of oil of similar character in the Vinton oil field by other of the pipe line companies which were doing business in said Vinton field December 21, 1912; in other words, the highest price at

which other of the pipe lines which were doing business in the Vinton oil field on December 21, 1912, were, on or about December 24, 1914, offering or contracting to pay for oil to be produced and delivered to them, beginning on or about said date, and extending over a period thereafter."

The paragraphs setting up this defense, and defenses with reference to the other points in controversy, were followed by another to the effect that:

"In the event the court should construe and hold the contract and the option clause therein providing for a two years' extension, as written and signed by the parties, to fix as the price for the oil during said extension period the highest contract price for similar oil in the Vinton field, which was being in good faith, on or about December 24, 1914, paid by either of the pipe lines which were doing business therein December 21, 1912, without reference to the time when said contract was entered into, and not the highest contract price being in good faith, on or about December 24, 1914, offered or contracted by either of said lines to be paid, [defendant] presents this its counterclaim."

And it says that it was the intention of the parties, when the contract was entered into, to pay the price provided by the contract as construed by the defendant, and that the parties believed that the writing so expressed their contract, and that, if the writing meant anything other than this, a mutual mistake in the choice of words and in reducing the contract to writing had been made, and the defendant prayed that the contract be reformed to express the intention of the parties.

Evidence was introduced of the circumstances under which the contract was made and the option exercised, and of pertinent facts concerning the conduct of the oil business. The court's opinion was introduced by the words:

"I am called upon to construe a certain contract"—identifying the contract in question. "It is the contention," said the court, "of the plaintiff that the price to which reference is made in this contract under consideration in suit was the price at which oil was being sold under contracts executed in 1913, before the expiration of this contract period in 1914. I do not think I can give it that construction without doing violence to the language employed, even without regard to the testimony produced on the trial of this case as to the meaning the witnesses understood was conveyed by the language of the contract. * * * The witnesses have plainly indicated that there is a difference between the market price and the contract price of oil. The market price means the price at which oil will be delivered to the purchaser, and the contract price is the price at which the producing company can sell oil for a period in future covered by an agreement. * * * So that I think, under the agreement the parties have made, and the language contained in this contract, the purpose of the parties was to give the Sun Company the right to renew this contract for a period of two years at the price for which the oil could be contracted at the time of renewal, and not at the price for which oil could be contracted for months in advance of the expiration of the agreement between the parties. I hold, therefore, that the Sun Company has the right under this contract to exercise its option of renewing its contract at the contract price of 60 cents per barrel."

A judgment was accordingly entered, from which judgment an appeal was taken. The appellants, in their brief filed therein, begin their argument by stating:

"There was no proof offered to show any mutual mistake, and that issue is not in this case. The question is: What does the language of the contract mean?"

The brief of the appellees was entirely confined to a consideration of the meaning of the contract. The Circuit Court of Appeals reversed the case. 230 Fed. 105, 144 C. C. A. 403. The opinion was confined exclusively to the construction of the contract. Neither in the opinion of the trial judge, nor in the brief of appellant, nor in the brief of appellee, nor in the opinion of the appellate court, was any reference made to the cross-action of the defendants. The opinion of the appellate court sustained the construction given by the District Court to the contract, except as to the meaning of the paragraphs hereinbefore recited with reference to the renewal price. The opinion concludes:

"Because of the effect it gave to the provision of the contract first above mentioned, that decree is reversed, and the cause is remanded for further proceedings not inconsistent with the conclusions above stated."

The cross-action was, under its very terms, effective only in the event that the construction refused by the District Judge and given by the appellate court should prevail. There was no occasion for the trial court to pass upon the question as to whether or not a mutual mistake was made in the drawing of the contract, because the trial court held that the contract meant exactly that which the defendants who filed the cross-action insisted that it meant. There could be no occasion to determine whether a mutual mistake was made in the use of language, when the language was construed to mean what the defendants filing the cross-action said that the parties understood it to mean.

It is quite possible that, notwithstanding the trial court had no reason and no occasion for passing upon the facts with reference to mutual mistake, the appellate court could have held that the evidence introduced in the first trial was available for determining the cross-action, and could have held that this evidence did not sustain the cross-action. Such a holding would have deprived the defendants of the very substantial right of having this issue of fact passed upon by the trial court; but it is possible that the appellate court could, nevertheless, have determined the issue. But no such issue was determined by the appellate court. No reference whatever was made to the cross-action. Until the filing of the opinion of the majority of the court in the present case, no court had ever undertaken to determine whether or not a mutual mistake was made by the parties in using the language which the trial court held to mean one thing, and which this court has held to be unambiguous and to mean another thing.

Upon the remanding of the case for "further proceedings not inconsistent with the conclusions above stated," the evidence introduced in the original case was again introduced. The trial court, assuming that the judgment of the Circuit Court of Appeals disposed of the case, refused the Sun Company a trial upon its cross-bill. In my opinion, the Sun Company was and is entitled to a trial upon this cross-bill. A determination that the parties to the contract did not mean to contract as the writing indicated could not be in conflict with a conclusion as to what the words actually meant. In the case of Mutual

Life Ins. Co. v. Hill, 193 U. S. 551, 24 Sup. Ct. 538, 48 L. Ed. 788, Justice Brewer says:

"When a case is presented to an appellate court it is not obliged to consider and decide all the questions then suggested, or which may be supposed likely to arise in the further progress of the litigation. If it finds that in one respect an error has been committed so substantial as to require a reversal of the judgment, it may order a reversal without entering into any inquiry or determination of other questions. While undoubtedly an affirmance of a judgment is to be considered an adjudication by the appellate court that none of the claims of error are well founded, even though all are not specifically referred to in the opinion, yet no such conclusion follows in case of a reversal. It is impossible to foretell what shape the second trial may take, or what questions may then be presented. Hence the rule is that a judgment of reversal is not necessarily an adjudication by the appellate court of any other than the questions in terms discussed and decided. An actual decision of any question settles the law in respect thereto for future action in the case. From the rule as stated above the appellate court is not compelled to pass upon all questions presented, and the parties and the trial court are bound only by those decided."

If additional authority on this question is desired, it is furnished in the following cases: Sibbald v. United States, 12 Pet. 488, 9 L. Ed. 1167; Ex parte Union Steamboat Co., 178 U. S. 318, 20 Sup. Ct. 904, 44 L. Ed. 1084; In re Sanford Fork & Tool Co., 160 U. S. 248, 16 Sup. Ct. 291, 40 L. Ed. 414; Hawkins v. Cleveland, 99 Fed. 323, 39 C. C. A. 538; Taenzer v. Chicago, etc., Ry. Co., 191 Fed. 543, 112 C. C. A. 153.

Appellants are entitled to a trial in the District Court on the issues of fact presented by their pleadings, and they have never secured such a trial. The court in its present opinion holds that appellant has not been prejudiced by the failure of the trial court to pass upon the issue, upon the ground that the evidence was insufficient to support a finding for appellant. I do not undertake to express an opinion as to what judgment ought to be rendered on the facts of this case. I am, however, of the opinion that, if the District Judge had found for the appellants upon the issue of fact presented by the cross-action, an appellate court would not be justified in setting aside the finding.

The question as to the meaning of the clause under consideration has been definitely determined. Apparently all of the parties to the contract primarily construed the language as the District Judge construed it. At the date of the exercise of the option, the appellant construed it in the same way. According to testimony, it was not until after that that a lawyer could be found who gave it a different construction. This court has held that the language of the agreement is "not ambiguous"; that its meaning "is not doubtful." While this must be accepted as true, the circumstance that all the persons connected with the transaction primarily gave it a different meaning from that now given must be regarded as evidence of great weight in determining the issue of mutual mistake. The circumstance that it was not a contract of a character that parties would have been likely to enter into under the circumstances connected with the oil business is also entitled to weight in determining that issue. Parties were contracting with reference to a price two years subsequent to the date of the contract; it is not to be assumed that they intended to have the

price fixed by contracts of others which might have been entered into prior to the making of this contract, or at any time within two years thereafter; it is not to be assumed that they would have made any reference to good faith in the fixing of the price, if prices were to be determined by contracts entered into antecedent to the making of the contract providing for the renewal.

Even at the time the renewal was made, and the Vinton Company acknowledged the receipt of the notice of renewal, it called attention to contract prices of $1, and stated that it understood that the contract "is renewed for two years' at the price of $1, or over, if we ascertain a higher contract is being paid." It cannot be assumed that the parties intended to make the contract dependent upon facts not even ascertainable. No other language can be as clear as that which is judicially determined to be unambiguous, but the circumstances detailed cannot be ignored in passing upon the question of mutual mistake. The testimony of the manager of the Sun Company leaves no question of the fact that he made a mistake, even if any additional evidence was required, when he renewed at $1; the market price being 60 cents. Mr. Pew, the manager, testified that:

There was a discussion between the parties, before the renewal clause was placed in the contract, to the effect that the Sun Company, "to exercise its option, would have to do so on the basis of the highest market price then paid by pipe line companies at that time." "The agreement was that the Sun Company, if it exercised its option, would have to do so at the highest price that would be offered to them by any one else." "There was a very clear understanding of what we were trying to do; everybody understood it." "They claim these terms meant the contract price was the price being offered on contracts at that time; they understood it that way, and that is the way I think it is." "The other parties to the contract understood it that way." "I understand the contract price at any time is the contract price then being offered for contracts." "I was not mistaken as to our intention—the Sun Company's intention and the Vinton Petroleum Company's intention." "We discussed the matter with Stark and Brown as to market price, and we left it at the highest market price being paid by our competitors." "I think it was fully discussed. I know the opposite side, as represented by Mr. Abbott, who negotiated the contract, had the same idea." "Undoubtedly, we would not have made a contract for a long term of years, unless we could govern the prices of oil on renewal. We insist absolutely that that was to govern the price—the price at that time."

Mr. J. M. Abbott testified that he participated in negotiating the sale. He testified:

"Well, the thing was how to word it, so that it would be properly worded. I remember we discussed using the term 'market price,' and finally put it in the language that is in the contract now. My recollection is that there was not much discussion about it; it was just how to word it so as to convey the meaning intended to be conveyed." "My recollection is that the only thing that was considered was what was to be paid for the oil in the incoming year after the two outgoing years. The parties tried to put it down; I remember that we discussed the words 'market price,' and the language that was in the contract was finally put in." "Q. Well, did the parties reach a common agreement and understanding as to what should be paid for the oil sold by the Vinton Petroleum Company to the Sun Company after the termination of the two years period? A. I thought so at the time. Q. Now, you say that you were discussing as to how you should arrive at the option price to be exercised, and you discussed the market price, and substituted for that the highest

contract price? A. Yes, sir; to be paid by other companies or by any company in the field, by any pipe line company in the field."

"Question by the Court: You said awhile ago that you talked about the market price, and discarded that word, and used the words 'highest contract price.' Was there anything said before you discarded that term and used the other? You said for some reason the market price was concluded not to be the proper term to use and was discarded, and the term 'highest contract price' was used. A. Well, we wanted to get the benefit of all the competition, in order to get the highest price for the incoming years under the option of the Sun Company. Q. By competition you mean you were to get the best offers of other companies, and get the price that way; is that what you mean? A. You understand, if we had expressed it any other way, nobody would bid on Dr. Brown's oil, or the Vinton Petroleum Company's oil, rather, and by putting it at the highest price paid you would have the benefit of any deal that the Gulf Company would make with other parties, or the Texas Company would make with other parties, as a guide for the price."

The evidence clearly indicates that the officers of the Vinton Petroleum Company, contemporaneously with the renewal, or just prior thereto, undertook to secure offers for the oil, to be used as the basis for the charge to be made the Sun Company under the terms of the renewal contract. This is indicated by the testimony of the witness Harlan with reference to what took place between him and Mr. Dullinham, the secretary of the Vinton Company. To the like effect is the testimony of the witness Hanszen, who testified with regard to what took place between Mr. Nazro, of the Guffey Petroleum Company, and Mr. Gordon and Mr. Bankenstein. The testimony of W. H. Stark, a stockholder, and, at the time of the trial, general manager, of the Vinton Company, indicated that at the date of the renewal he understood the contract as the Sun Company did, and undertook to ascertain what was being paid at that time on contracts by the Texas Company and the Gulf Company. The testimony of this witness also indicates that the construction now contended for by them did not occur to any one of them until the day on which a letter was written, acknowledging receipt of the renewal notice, and suggesting that the price payable was to be determined by contracts made prior to that time. It was asked:

"Was not that the first time it ever occurred to you? A. I don't know; it might have been the first time. I do not say it was or was not. Q. Didn't Mr. Holland suggest that interpretation of the written contract then for the first time? A. I don't know; I think so, probably. Q. You think it is a fact? A. Yes, sir."

No effort is made to give all the testimony; but, if the District Judge had predicated a finding in favor of the defendants on the testimony of the witnesses referred to, this court would have been compelled to depart from its ordinary practice in order to set aside the finding.

A litigant has the right to a trial of his cause, and then to an appeal. At least, that is so ordinarily, and certainly that was the right of the Sun Company in this case. The right to have the trial court pass upon the issues of fact is a very substantial right. If the trial court finds for a party, he has thereafter the point of vantage; the burden of showing the incorrectness of the judgment is upon his adversary. The appellate court will not reverse the finding of the trial court upon a

matter of fact, unless it is clearly erroneous. The course which this case has taken has deprived the Sun Company of this substantial right. It has not been permitted to secure the judgment of the District Court upon whether or not the parties intended to enter into a contract such as the Sun Company insists was entered into. If the trial court had passed upon the issue of fact presented by the cross-bill, and had made a finding in behalf of the Vinton Company, a judgment of affirmance would, doubtless, have been in accordance with the function and practice of an appellate court. If his finding had been in behalf of the Sun Company, the evidence heretofore reviewed would have rendered necessary an affirmance.

The case should be remanded, to give the Sun Company that which it is entitled to—a finding by the District Judge upon the merits of the cause submitted by its cross-action.