AMERICAN AGR. CHEMICAL CO. v. GERMAIN LAND & TIMBER CO.

(Circuit Court of Appeals, Fifth Circuit. February 23, 1927.)

No. 4877.

1. Reformation of instruments ⬛═⊃45(2)—To warrant reformation of written contract on ground of mutual mistake, which is denied, evidence must be clear and satisfactory.

Where reformation of a written contract is sought on the ground of mutual mistake, and the alleged mistake is denied, the evidence to establish it should be considered with great caution, and to warrant reformation should be of the clearest and most satisfactory character, and sufficient to convince the court that the writing does not express what the parties intended, not merely the one party seeking the reformation.

2. Reformation of instruments ⬛═⊃45(15)— Evidence of mutual mistake in contract for sale of timber held insufficient to warrant reformation.

Evidence *held* insufficient to warrant reformation of a written contract for sale of standing timber, on the ground of mutual mistake.

Appeal from the District Court of the United States for the Southern District of Florida; Lake Jones, Judge.

Action at law by the American Agricultural Chemical Company against the Germain Land & Timber Company, in which defendant filed an equitable plea asking reformation of a contract. From a decree granting such relief, plaintiff appeals. Reversed.

Kenneth I. McKay, of Tampa, Fla. (R. W. Withers, M. B. Withers, and Maynard Ramsey, all of Tampa, Fla., on the brief), for appellant.

George P. Raney and Jas. W. Morris, Jr., both of Tampa, Fla., for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. The appellant brought an action against the appellee to recover the amounts of two notes made by the latter, each dated January 2, 1923, one for $15,000, payable April 1, 1924, the other for $7,735, payable July 1, 1924, with inter-

est from the maturity dates, which notes were given pursuant to the terms of a written contract between the parties, dated January 2, 1923, which provided for the sale by appellant to appellee of timber and trees suitable for sawmill purposes standing or growing on described lands in Florida. That contract, a copy of which was attached to appellee's amended declaration, after recital of the agreement of the appellant to sell and of the appellee to buy, "upon the terms and conditions hereinafter set forth," the timber on described land, contained the following provisions:

"The buyer represents that it has caused a timber cruise to be made of the said lands of the seller above described, and that as a result of such timber cruise it has ascertained that there is contained in the said lands of the seller above described at least 11,698,000 board feet of sawmill timber.

"Second. *Price.*—The buyer agrees to pay the seller for the said timber the sum of eighty-seven thousand seven hundred and thirty-five dollars ($87,735), payable as hereinafter specified, and in addition thereto to pay to the seller, as hereinafter specified, seven 50/100 dollars ($7.50) for each one thousand (1,000) board feet thereof in excess of 11,698,000 board feet.

"The ownership of and title to the trees and timber which are the subject-matter of this contract shall pass to the buyer from time to time as and when any of the said trees and timber are removed from the lands of the seller hereinbefore described: Provided, nevertheless, that the buyer agrees to pay seller the said $87,735 as aforesaid, even though the said trees and timber may hereafter be damaged or destroyed by fire or otherwise."

The contract provided for the appellee paying $20,000 in cash concurrently with the execution of the contract and giving five notes, three for $15,000 each, payable, respectively, July 1, 1923, October 1, 1923, and January 1, 1924, the other two being the notes first above mentioned, and that default in the payment of any one of said notes shall render all of said notes immediately due and payable at the option of the seller. The following are other provisions of the contract:

"On April 1, 1924, and on April 1st of each year thereafter during the life of this contract, the buyer shall deliver to the seller the buyer's additional promissory note of that date, maturing on July 1st next thereafter, to the seller's order, for an amount equal to the amount then owing to the seller from the buyer under this contract in pay-

ment of the purchase price of timber in excess of 11,698,000 board feet, and upon the termination of this contract the buyer will pay to the seller in cash the purchase price of any of said timber then remaining unpaid. * * *

"*Measurement of Timber.*—All the timber and trees sold hereunder shall be scaled daily upon removal from the seller's lands to the buyer's sawmill at Limestone, Hardee county, Florida, on the log deck at said mill in the customary manner used in the sawmills in Florida and the contents of each log shall be determined according to Scribner's Doyle's Rules of Measurement; and the buyer covenants and agrees to keep an accurate daily record of the scaling or measurement of all logs as aforesaid in a book of record, which shall at all reasonable times be availabe for inspection by the seller or its duly authorized agent.

"It is hereby covenanted and agreed that the said timber and trees are sold without any warranty or promise, expressed or implied, on the part of the seller, as to the actual quantity of timber contained in any of the said parcels of land of the seller hereinbefore described, or the condition of the said timber and trees or their fitness for any particular purpose. * * *

"This instrument embodies the whole agreement of the parties. There are no promises, terms, conditions, or obligations referring to the subject-matter other than contained herein."

The contract was executed on behalf of appellant by Geo. B. Burton, its president, and J. A. Starrett, its secretary. The appellee filed an equitable plea which contained allegations to the following effect: Neither of the parties to said contract knew the exact amount of timber on the described land, and both of the parties believed that there was sufficient timber on said land to produce the estimated quantity of sawed timber stated in the contract, and, acting on that belief, appellee paid the $20,000 in cash and gave the five notes above mentioned. It was the intention of both parties to the contract that appellant should sell and appellee should buy all the timber on said lands of the stated size and kind at the price of $7.50 per 1,000 feet of sawed lumber, and it was not the intention of the parties that appellee should be required to pay to appellant an amount of money in excess of the sum arrived at on the basis of $7.50 per 1,000 feet of sawed timber obtained from the timber and trees on said land.

There was not sufficient timber and trees

on said land to produce, when milled and cut in accordance with the terms of said contract, 11,698,000 board feet of sawed timber, and at the time of the execution of said contract there was only sufficient timber to produce, when cut and milled in accordance with the terms of said contract, 8,597,136 board feet of sawed timber according to measurement by Scribner's Doyle's Rule, and at the time said plea was filed there was no more timber on said lands suitable for sawmill purposes. The amounts already paid by appellee to appellant constituted payment in full at the contract price for all the timber on said land. The failure of said contract to contain any provision for the cancellation of a note or notes outstanding after appellee had paid for all timber on said lands was a result of the mutual mistake of the parties.

The plea contained prayers to the effect that said contract be reformed to express the true intent and meaning of the parties, by inserting therein a provision to the effect that, upon the cutting and milling of all of the timber and trees on said land of sufficient size and dimensions for sawmill purposes, all notes given by appellee to appellant in pursuance of said contract in excess of the purchase price of said timber at the rate of $7.50 per 1,000 feet according to measurement by Scribner's Doyle's Rule shall be canceled, and that the two notes sued on be canceled.

The appeal is from a final decree reforming said contract pursuant to the prayer of the equitable plea, and ordering the cancellation of the two notes first above mentioned. Appellant assigns as errors the action of the court in denying a motion to strike said equitable plea, in admitting certain evidence over objections by the appellant, and in granting the relief prayed for by appellee.

In view of conclusions stated below, it is assumed, without being decided, that the court did not err in denying the motion to strike or in admitting evidence which was objected to. Testimony adduced was without conflict to the following effect:

During several months preceding the date of the memorandum hereinafter mentioned, there were negotiations between appellant and appellee for the sale by the former to the latter of the timber in question, the appellant being represented in those negotiations by Burdette Loomis, Jr., the manager of its Florida properties, and appellee by A. A. Germain, its secretary and treasurer. Those negotiations resulted in the execution of a written memorandum, dated January 2, 1923, of "proposed contract for sale of standing timber in Hinds county, Florida, to be entered into by" the parties. That memorandum, which was signed in behalf of appellant by its secretary, contained the following:

"The proposed contract is to be dated January 2, 1923, and shall provide for the sale by the American Agricultural Chemical Company, and the purchase by the Germain Land & Timber Company (or A. A. Germain, and L. L. Germain, Jr.), of standing timber for sawmill purposes on approximately 4,935 acres of land located in township 34 south, ranges 23 and 24 east, Hardee county, Florida, containing an estimated minimum quantity of 11,045,000 feet. The contract shall also contain provision for the sale of an additional quantity of timber in section 28, township 34 south, range 23 east, the sale of such additional quantity being contingent upon the buyer and seller reaching an agreement as to the quantity of timber contained in said section 28.

"The entire quantity of timber to be sold is to be sold subject to measurement at buyer's mill by Scribner-Doyle Rule. The proposed sale is to be absolute sale of the said quantity of 11,045,000 feet, and of such additional quantities in section 28, and as determined by measurement at buyer's mill, as provided in the preceding sentences."

That memorandum set out sundry provisions to be included in the formal agreement to be entered into, including one stating the price, $7.50 per 1,000 feet, and another as to the payment of $20,000 in cash and the making of notes for the balance of the price. It also provided that the formal agreement to be entered into is to be prepared by appellant's counsel, and to be subject to appellant's approval, before the proposed agreement shall become binding upon the parties thereto. After that memorandum was executed, each of the parties had a cruise made of the section 28 mentioned in the above set out provision of the memorandum. Appellant's cruisers estimated the amount of timber on that section to be 692,500 feet, and appellee's cruisers estimated the amount to be 613,000 feet. Thereupon Mr. Loomis, for the appellant, proposed in writing to Mr. Germain that the parties split the difference, and that the appellee pay for 653,000 feet of timber on that section. Appellee agreed to that suggestion in a letter to the appellant, dated January 19, 1923, which contained the following:

"In reply to your wire received this morning, we were pleased to wire you that we would accept of Mr. Loomis' compro-

mised figure of 653,000 feet for section 28, and that it would be satisfactory for you to arrange a contract accordingly. This will make a total minimum purchase price as follows:

Omitting section No. 28 11,045,000 ft. at $7.50 $82,837.50
Including section No. 28    653,000 ft. at $7.50   4,897.50

                                11,698,000 ft.      $87,735.00

"This will fix the amount of the last note maturing July 1, 1924, to read $7,735."

Thereupon the formal contract was prepared by appellant's counsel and the instrument was sent to the appellee for examination. Some changes were made in the contract as prepared, pursuant to suggestions made by Mr. Germain in letters written by him. That contract as originally prepared had been in appellee's possession more than a month when the instrument finally signed, which embodied changes suggested by Mr. Germain, was agreed on by the parties, and executed on behalf of the appellant by Geo. P. Burton, its president, and J. A. Starrett, its secretary, and on behalf of appellee by its president and A. A. Germain, its secretary. There was conflicting testimony as to what was said in conversations between Mr. Loomis and Mr. Germain prior to the date of the memorandum and as to their agreement and understanding as to the terms of sale; the testimony of Mr. Germain tending to prove that the understanding was that appellee was to pay $7.50 per 1,000 feet for the timber actually on the land, and the testimony of Mr. Loomis tending to prove that the written instrument correctly stated what previously was agreed to by him. There was no evidence tending to prove that either of the appellant's officials who acted for it in executing the written contract agreed or consented to anything except what was stated therein.

The above-quoted provision of the preliminary memorandum quite persuasively indicates that appellant's agreement on a price of $7.50 per 1,000 feet for the timber in question was coupled with a requirement that a stated number of feet be paid for. That provision explicitly shows that appellant's agreement to sell the timber on the mentioned section 28 was contingent upon the parties reaching an agreement as to the quantity of timber contained in that section. The language used indicates the existence of an understanding that the stated price per 1,000 feet was to be paid for stated quantities of timber on described lands. It seems not unreasonable to infer that the sale of the timber on section 28 would not have been made contingent upon the parties reaching an agreement as to the quantity of timber on that section, if it had been the understanding of the parties that appellant was to receive the stated price per 1,000 feet for only a smaller quantity of such timber afterwards found to be actually all there was on that section.

Appellee's letter of January 19, 1923, unequivocally shows that it intended to obligate itself unconditionally to pay $87,735 for the estimated or agreed quantities of timber. The documentary evidence of the agreement or understanding of the parties, reached prior to the execution of the instrument evidencing their final agreement, is not consistent with a contention that appellant agreed to sell the timber on the described land otherwise than subject to the condition that a stated number of feet be paid for at the stated price. The language of that instrument is unequivocal to the effect that appellee's obligation to pay $87,735 was unconditional, not contingent upon the described land containing 11,698,000 feet of timber, and that it was to pay $7.50 for each 1,000 board feet in excess of 11,698,000.

[1, 2] We are of opinion that the evidence, including that admitted over appellant's objections, fell far short of warranting the granting of the relief awarded by the decree. Where the reformation of a written contract is sought on the ground of mutual mistake, and the alleged mistake is denied, evidence to establish it should be considered with great caution, and, to warrant the reformation sought, the evidence should be of the clearest and most satisfactory character, sufficient to convince the court that the writing does not express what was intended by the parties, not merely the one who seeks a reformation, and as to what it was they intended the writing to express. Caution in accepting controverted oral testimony relied on to support an application to alter a written instrument is specially appropriate, when it has been in force for a considerable period before an attempt is made to reform it, and the parties, before and after its execution, had ample opportunity to become acquainted with its provisions, and, before reformation of it was sought, an event had occurred which renders the sought-for change in its terms of vital importance to the party who seeks to reform it. Sun Co. v. Vinton Petroleum Co. (C. C. A.) 248 F. 623.

The record does not show that Mr. Loomis, the employee of the appellant who acted for it in preliminary negotiations for the sale

of its timber on the lands described, had or assumed to have authority to act for the appellant in consummating a contract for the sale of that timber. As above indicated, appellant's officials, who acted for it in executing the memorandum and the instrument purporting to evidence the contract as finally agreed on, did not consent to bind the appellant to a contract variant in any respect from the one evidenced by the last-mentioned instrument. Certainly the fact that appellee and the officials of the appellant who acted for the latter in concluding the contract mutually agreed on a contract other than the one expressed in the written instrument signed was not shown by that measure and character of proof required in such a case. The effect of the decree was to embody in the contract of the parties provisions not satisfactorily shown to have been agreed to by a duly authorized representative of the party resisting the granting of that relief.

We conclude that that decree was erroneous. It is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.