## McBRIDE v. UNITED STATES.

### (Circuit Court of Appeals, Fifth Circuit. November 3, 1922.)

### No. 3849.

1. **Arrest ☞63(3)—Criminal law ☞394—Intoxicating liquors ☞249—Evidence secured in search without warrant held admissible; where officers smelled fumes of a still, search and arrest without warrant held justified.**

   Federal agents, who, having entered on premises where there was an unoccupied house, smelled the fumes from a still, *held* authorized without a warrant to search, and, having found the still in illegal operation in a stable, to arrest those operating it, and their testimony as to the facts so discovered *held* admissible.

2. **Intoxicating liquors ☞255—Owner of still, seized while in illegal operation, held not entitled to its return.**

   The owner of a still, seized while in illegal operation, and held under due process for forfeiture, *held* not entitled to its return.

3. **Arrest ☞63(3)—Authorized without warrant, when crime is committed in presence of officer.**

   When an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without warrant.

4. **Criminal law ☞1036(1), 1129(3)—Objection to evidence, not made below nor covered by assignment of error, not for consideration by appellate court.**

   Where an objection to evidence was not stated to the trial court, nor covered by an assignment of error, it is not properly for consideration by the appellate court.

In Error to the District Court of the United States for the Southern District of Alabama; Robert I. Ervin, Judge.

Criminal prosecution by the United States against Robert J. McBride. Judgment of conviction, and defendant brings error. Affirmed.

Harry T. Smith, William G. Caffey, and Joseph N. McAleer, all of Mobile, Ala., for plaintiff in error.

Aubrey Boyles, U. S. Atty., of Mobile, Ala.

Before WALKER, BRYAN, and KING, Circuit Judges.

KING, Circuit Judge. Certain United States prohibition officers were out looking for persons suspected of violating the National Prohibition Act (41 Stat. 305). They came to a large inclosure, on the gate of which was a sign: "Vicious Dog—Hail before Entering." Inside was a dwelling house, and in a smaller inclosure a stable or barn at some distance from the road and dwelling. The house was unoccupied. There being no signs of any dog or person, they entered the first gate without hailing, and were proceeding to the stable. When about to enter the stable lot, they plainly perceived the fumes of whisky in process of manufacture. Entering the stable, they discovered a trapdoor leading to a cellar below the stalls, and saw a light and the steam of the whisky being manufactured coming out. In the cellar they found a 75-gallon still in operation. Two negroes were in charge,

whom they arrested. A quantity of beer and 12 quarts of corn whisky were on hand, which they poured out.

After this, McBride drove up in a buggy. The officers informed him what they had done, that they were holding the negroes, and asked him what he had to say about it. He answered that the negroes had nothing to do with it; that he was responsible and had the still operated, and that a white man was operating it. The premises belonged to McBride, but no one was living on them at the time. At McBride's request, the officers agreed that he could come into Mobile the next morning and bring the two negroes with him, and he stated he would bring the other white man also, and no further arrests were then made. The officers took possession of the still and copper worms, caps, and connections.

An indictment was found against McBride, containing three counts. The first count charged him with unlawfully manufacturing, selling, bartering, transporting, delivering, furnishing, and possessing intoxicating liquors contrary to the statute of the United States; the second, with unlawfully having and possessing a still and distillery apparatus designed to manufacture intoxicating liquors intended for use in violation of the National Prohibition Act; the third, with unlawfully carrying on the business of a distiller of spirituous liquors with intent to defraud the United States of the tax on the spirits distilled by him.

Just before the trial, McBride petitioned the court for the return of the still and other property seized by the United States officers, on the alleged ground that the federal officers went on petitioner's premises without any search warrant or other legal proceeding, but were trespassers, and took said property by means of such trespass. The officers justified on the ground that they had entered the premises after smelling fumes of whisky then being made in violation of law, and that McBride had admitted the ownership and operation of the still while it was in actual operation; that they had seized the property as forfeited to the United States, and held such as they had as the property of the United States. The court denied the petition.

On the trial of McBride, the officers testified as above, and, it being admitted that when they entered the premises and the stable they had no warrant, the defendant objected to their testifying, on the ground that their testimony was based on what they had discovered by such entry. Objection also was made to evidence of the confession of McBride on the single ground that no competent proof of the corpus delicti had been made; the testimony of the federal officers being illegal for the reasons above alleged. Both of these objections were overruled, and under the charge of the court the jury found McBride guilty under the second and third counts of the indictment.

The only points presented in the brief or on the oral argument are the refusal of the court to order the property taken by the officers returned to the defendant, the refusal to exclude the testimony of the federal officers, on the ground that knowledge of the facts testified to was acquired by means of an entry on the premises aforesaid without search warrant or other legal process, and the admission in evidence of the confession of McBride over the objection that there was no legal

proof of the corpus delicti. It is now urged also that there was no sufficient evidence that the confession was voluntarily made.

These points present the substantial questions raised in the case. No others having been insisted on in the brief, or argument, these alone will be considered. Sun Co. v. Vinton Petroleum Co., 248 Fed. 623, 160 C. C. A. 523; Erie R. Co. v. Schleenbaker, 257 Fed. 667, 168 C. C. A. 617.

The court did not err in refusing to exclude the testimony of the prohibition officers of what they discovered and did after entering the stable. Neither the defendant nor any one else was living on the premises at the time. At the outer gate was a sign which, instead of forbidding entrance into the lot, warned of a vicious dog and enjoined a hail to be first given. Seeing no dog, or any person, the officers entered the lot. There is no evidence that they would have attempted to enter any building, had they not discovered by the sense of smell that a crime was being at the time committed. They entered the stable and found the crime in progress.

The objection to the testimony is based on the Fourth Amendment to the Constitution of the United States, which provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized,"

and on that portion of the Fifth Amendment which provides that no person "shall be compelled in any criminal case to be a witness against himself."

[1] Treating this stable as falling within the description of places covered by the Fourth Amendment, the question in this case is: Can an officer, without warrant, enter upon premises whereon he is informed by his senses a crime is being committed, and, having entered, finding a crime in progress, without warrant arrest the offenders and testify as to what such entry discloses? The case does not involve the taking of papers, or the use of any papers or property of the defendant in evidence against him. These were the questions presented by the cases of Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, Silverthorne Lumber Co. v. United States, 251 U. S. 386, 40 Sup. Ct. 182, 64 L. Ed. 319, and Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647.

In the case of Amos v. United States, 255 U. S. 314, 41 Sup. Ct. 266, 65 L. Ed. 654, property was not delivered on the petition of the defendant which had been seized without warrant and to which no claim had been made by the government. That property was introduced in evidence against the defendant on the trial of a criminal case, and the Supreme Court decided that the defendant was entitled to the delivery of the property, and that the introduction of it and of the testimony of the officers about it should have been excluded.

[2] In the instant case, while the original entry into the stable was without a warrant, there is no charge that the property was not held under proper proceedings at the time the application for its return was

made, but only that the officers had no search warrant or other legal process authorizing them to go on the petitioner's premises, and that the United States is now holding the property to be used as evidence against him. To this the United States replied that the property had been forfeited to the United States by its illegal use, and was held by the officers as the property of the United States, subject to its orders and those of the court.

The entry on these premises and into the stable was not to search for evidence, but, upon ascertaining that whisky was in process of manufacture thereon, to arrest those engaged in the commission of an offense then in progress. If an entry can be made without warrant in cases where the officers acquire information evidencing the present commission of a crime, then the use of knowledge acquired by such entry is not the use of knowledge illegally acquired.

The Fourth Amendment was one of those adopted to supply a Bill of Rights, the omission of which had been urged as an objection to the ratification of the Constitution. The rights which it secured were not novel, but had existed at common law and their infraction was one of the grievances of the colonists. They had been recently recognized by the courts in England. Entick v. Carrington, 19 Howell St. Tr. 1029; Underwood v. State, 13 Ga. App. 206, 208, 78 S. E. 1103; Thorton v. State, 117 Wis. 338, 93 N. W. 1107, 98 Am. St. Rep. 924; United States v. Crosby, 1 Hughes, 448, Fed. Cas. No. 14893.

At common law it was always lawful to arrest a person without warrant, where a crime was being committed in the presence of an officer and to enter a building without warrant, in which such crime was being perpetrated. Wharton, Criminal Procedure (10th Ed.) §§ 34, 51; Delafoile v. New Jersey, 54 N. J. Law. 381, 24 Atl. 557, 16 L. R. A. 500, 502; In re Acker (C. C.) 66 Fed. 290, 293.

[3] Where an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, so as to justify an arrest without warrant. Piedmont Hotel v. Henderson, 9 Ga. App. 672, 681, 72 S. E. 51; Earl v. State, 124 Ga. 28, 29, 52 S. E. 78; Brooks v. State, 114 Ga. 6, 8, 39 S. E. 877; Ramsey v. State, 92 Ga. 53, 63, 17 S. E. 613. Therefore we are of the opinion that the entry into this stable under the circumstances of this case was legal, and that the court did not err in admitting the testimony of the officers.

[4] The only objection made to the admission of McBride's confession was that there was no legal proof of the corpus delicti, excluding the evidence of the officers, and that without such proof the confession is inadmissible. The only error assigned is that the court refused to exclude this evidence upon this ground alone. It is now urged in addition that the confession was not a voluntary one. This point not having been made in the court below, and there being no assignment of error on this ground, it is not properly here for consideration. Tevis v. Ryan, 233 U. S. 273, 289, 34 Sup. Ct. 481, 58 L. Ed. 957; Wood v. Wilbert, 226 U. S. 384, 386, 33 Sup. Ct. 125, 57 L. Ed. 264; Wiggins Ferry Co. v. Levinson, 211 Fed. 122, 123, 127 C. C. A. 520; Wight v. Washoe County Bank, 251 Fed. 819, 163 C. C. A. 653.

But there is no evidence of any coercion, or even persuasion, used

to induce the confession. The officer testified without contradiction that he made no threats and offered no inducements, but stated to McBride what he had found, that he was holding the two negroes found at the still, and asked the defendant what he had to say about it. The defendant then stated that he was responsible; that he had the still operated by a white man.

The record shows that McBride was not even arrested at the time, but on his request was given the custody of the two negroes and permitted to depart; he agreeing to produce himself and them the next day before the proper officers. The decision that the testimony of the officers was properly admitted disposes of the point of the absence of proof of the corpus delicti.

The judgment of the District Court is affirmed.