### AGNELLO et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. March 29, 1923.)

### No. 156.

**I. Criminal law ⬤⇒394—Admissibility of evidence obtained by unconstitutional search.**

By the weight of state authority, evidence obtained by an unconstitutional seizure is as much admissible as any other evidence secured by illegal means.

**2. Searches and seizures ⬤⇒2—Fourth Amendment only secures existing common-law right.**

The right of the people to be secure in their persons, houses, and effects against unreasonable searches and seizures was not created by the Fourth Amendment, but existed as a common-law right before the Constitution was adopted, but the amendment established it as a constitutional right which Congress itself cannot violate.

**3. Searches and seizures ⬤⇒7—Search under authority of law is reasonable.**

A search made under authority of law, whether with or without a search warrant, is reasonable, but if not so made it is unreasonable.

**4. Constitutional law ⬤⇒67—Whether search is unreasonable is judicial question.**

Whether a search is reasonable or unreasonable within the meaning of the Fourth Amendment is in all cases a judicial question, and no other department of the government, by any action it may take, can make a search reasonable which the courts regard as unreasonable.

**5. Searches and seizures ⬤⇒7—Search warrant cannot authorize unreasonable search.**

It is the general rule that there is no right to search a man's premises and seize his possessions without a search warrant, and that the warrant cannot issue, or, if issued, is invalid, if the search authorized is an unreasonable one, being contrary to law.

**6. Searches and seizures ⬤⇒3—Search without warrant may be authorized.**

Not all arrests without warrant are illegal, and not all searches and seizures without a warrant are prohibited; but under the federal as well as the state statutes, to justify search and seizure or arrest without warrant, the officer must have direct knowledge, through his hearing, sight, or other sense, of the commission of the crime.

**7. Searches and seizures ⬤⇒3—Authority to arrest without warrant may also extend to search of person and premises.**

In cases in which an officer may make an arrest without a warrant, he may without a warrant search the person so arrested and may be authorized to search the premises and seize articles which may be used in evidence against him on the trial for the crime for which he is arrested; his home or his office being no more sacred than his person or his liberty.

---

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**8. Searches and seizures ⬥⇒7—Whether search is unreasonable is question of fact in each case.**

Whether a search or seizure in a criminal case is or is not unreasonable must necessarily be determined according to the facts and circumstances of the particular case.

**9. Criminal law ⬥⇒395—Searches and seizures ⬥⇒7—Search of dwelling without warrant held reasonable and lawful.**

Where defendants were seen by government agents to deliver packages and receive money under such circumstances as to justify their arrest for selling narcotic drugs and search of their persons without a warrant, a search of their dwelling, from which they were seen to come immediately before, was not an unreasonable search in violation of their constitutional rights, and cocaine found during the search was not inadmissible on their trial as evidence unlawfully obtained.

**10. Arrest ⬥⇒71—Private person having right to arrest without warrant has same right as officer to search.**

A private person has the same right as an officer to arrest without a warrant if a felony is committed in his presence, and in such case has the same right as an officer to search the person and, if probable cause exists, the premises of the person arrested without a warrant.

**11. Searches and seizures ⬥⇒7—Whether in violation of constitutional rights depends solely on reasonableness.**

In determining whether a search or seizure was in violation of constitutional rights, the sole question in every case is whether under the evidence the search or seizure was unreasonable, and prior justified arrest of the person whose premises were searched is not a determining factor, but is merely evidence upon that question (per Hough, Circuit Judge, concurring).

In Error to the District Court of the United States for the Eastern District of New York.

Criminal prosecution by the United States against Thomas Agnello and others. Judgment of conviction, and defendants bring error. Affirmed.

O'Gorman, Battle, Vandiver & Levy, of New York City (George Gordon Battle, Isaac H. Levy, and George C. DeLacy, all of New York City, of counsel), for plaintiffs in error.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Guy O. Walser, Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before HOUGH, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. The defendants have been convicted under an indictment which charged them with the crime of conspiracy to commit the offense of selling heroin and cocaine without having registered or paid the tax prescribed and in violation of the Act of December 17, 1914 (38 St. c. 1, p. 785) as amended by sections 1006, 1007, and 1008 of the Revenue Act of 1918 (40 St. c. 18, pp. 1057–1132 [Comp. St. Ann. Supp. 1919, §§ 6287g, 6287l, 6287r]), commonly known as the Harrison Act. Each defendant has been sentenced to be imprisoned for a term of two years at Atlanta Penitentiary and to pay a fine of $5,000.

The indictment contained two counts. The first charged the offense of conspiring to sell heroin and cocaine in violation of the Harrison

Act. The second charged the actual sale of heroin and cocaine in violation of the act. At the trial and after the testimony was in the defendants moved to dismiss the second count on the ground that it did not allege that the offense occurred within the jurisdiction. This motion was granted and the second count was dismissed as to each of the defendants.

The salient facts are few and simple. On Saturday, January 14th, the defendants Alba and Centerino were approached by two agents in the employ of the government who stated that they desired to buy some narcotics. The agents were told to return on the following Monday night. At that time they again met Alba and Centerino and were then told that the narcotics would have to be procured. They waited at the house of Alba in Brooklyn while Centerino left for the purpose of obtaining the narcotics. Centerino returned with the defendants, Thomas Agnello, Frank Agnello, and James Pace. Centerino placed three or four packages on the table and received from Napolitano the sum of $350 in marked bills. There is testimony to the effect that at the time the packages were placed on the table the defendant Pace asked the stool pigeons if they had the money and were ready for business, and when one of them said "Yes" Frank Agnello took the packages out of his pocket and handed them to Thomas Agnello, who put them on the table.

At this point other agents of the government, who had accompanied the two agents already in the house and who had been waiting on the outside and had observed through a window what took place inside, broke into the room and arrested all the defendants. There were found on the person of Frank Agnello three or four other packages containing cocaine. Thomas Agnello was taken into another room and questioned, whereupon he sought to bribe one of the agents. Following this, several of the agents went to No. 167 Columbia street, Brooklyn, which was occupied as a grocery store and also as a residence by the Agnellos. This was the place from which Centerino, Thomas Agnello, Frank Agnello, and James Pace were seen by the agents to leave just after Centerino had gone there to procure the narcotics and from which the defendants returned to the home of Alba with narcotics. On top of a wardrobe in the room occupied by Frank Agnello there was found a can containing cocaine hydrochloride which the agents took into their possession.

It is claimed that the testimony that a can of cocaine hydrochloride was found in the room of Frank Agnello was improperly admitted in evidence, since it was obtained through an unlawful search. And this is the important question in the case. It seems to be admitted that the agents had the right to arrest these defendants without a warrant and had a right without a warrant to search their persons—a crime having been committed in their presence. But it is denied that the agents had any right to go from the place of the arrest to No. 167 Columbia street, from which all the defendants but Alba were seen by the agents to emerge a short time before and from which they were supposed to have obtained the drugs which Centerino had informed the government's agent he was going out to get and there search without a warrant the room of the defendant Frank Agnello. The ques-

290 F.—43

tion thus raised is one of great importance. May an agent of the government, in a case where he can arrest without a warrant and search the person without a warrant, search also without a warrant the home of the person so arrested? Is such a search and seizure to be regarded as such an "unreasonable" search and seizure as violated the constitutional rights of Frank Agnello? If it constituted such a violation, we must consider whether the property so seized was improperly received in evidence.

[1] The weight of state authority holds that evidence obtained by an unconstitutional seizure is as much admissible as any other evidence secured by illegal means. Commonwealth v. Dana, 2 Metc. (Mass.) 329; Commonwealth v. Tibbetts, 157 Mass. 519, 32 N. E. 910; Chastang v. State, 83 Ala. 29, 3 South. 304; Scott v. State, 113 Ala. 64, 21 South. 425; Starchman v. State, 62 Ark. 538, 36 S. W. 940; People v. Alden, 113 Cal. 264, 45 Pac. 327; State v. Griswold, 67 Conn. 290, 34 Atl. 1046, 33 L. R. A. 227; Williams v. State, 100 Ga. 511, 28 S. E. 624, 39 L. R. A. 269; Stevison v. Earnest, 80 Ill. 513, 517; Trask v. People, 151 Ill. 523, 38 N. E. 248; State v. Renaud, 50 La. Ann. 662, 23 South. 894; Chuett v. Rosenthal, 100 Mich. 193, 197, 58 N. W. 1009, 43 Am. St. Rep. 446; State v. Pomeroy, 130 Mo. 489, 497, 32 S. W. 1002; State v. Atkinson, 40 S. C. 363, 371, 18 S. E. 1021, 42 Am. St. Rep. 877; State v. Mathers, 64 Vt. 101, 23 Atl. 590, 15 L. R. A. 268 33 Am. St. Rep. 921; State v. Edwards, 51 W. Va. 220, 41 S. E. 429, 59 L. R. A. 465. In Wigmore on Evidence, vol. 3, § 2183, it is laid down that it has long been established that the admissibility of evidence is not affected by the illegality of the means through which the party has been enabled to obtain it. And see Harvard Law Review, vol. 35, p. 694.

The federal courts long followed the rule that a collateral inquiry into the mode in which evidence had been obtained would not be allowed when the question was raised for the first time at the trial. See Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 L. Ed. 575; Silverthorne Lumber Co. v. United States, 251 U. S. 385, 392, 40 Sup. Ct. 182, 64 L. Ed. 319. In Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177, the court held that if an application for the return of papers unlawfully seized was made before trial and refused, and then at the trial the papers were received in evidence, over objection, the judgment should be reversed. The same doctrine was laid down in Gouled v. United States, 255 U. S. 298, 41 Sup. Ct. 261, 65 L. Ed. 647. That case also asserted that an objection should be sustained and the evidence excluded although raised for the first time at the trial where the paper had been improperly seized but the defendant had no knowledge that the government had possession of the paper until it was offered in evidence. The court said, "A rule of practice must not be allowed for any technical reason to prevail over a constitutional right." In Amos v. United States, 255 U. S. 213, 313, 41 Sup. Ct. 266, 65 L. Ed. 654, it was held that if it is clear and undisputed that property used in evidence against a defendant on a criminal trial was procured by the government through an unconstitutional search and seizure, his petition for its return is not too late when made immediately after the

jury is sworn, and that his motion to exclude the property and testimony concerning it from evidence should not be denied as inviting a collateral issue.

In the case at bar no application for the return of the property alleged to have been unlawfully seized was made either before or at the time of trial. But the evidence that the can was found in the room searched without a warrant was objected to when it was offered on the ground that it violated the defendant's constitutional rights, in that the government had obtained possession of it through an unlawful. search and seizure. The court overruled the objection and admitted the evidence. This we think would have been error under the decisions in the Gouled and Amos Cases—if the seizure had been made in violation of the constitutional provisions now to be considered. To hold otherwise would be to allow a rule of procedure to triumph over a constitutional right, and this the federal courts cannot suffer to be done.

The Fourth Amendment to the Constitution declares that—

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Fifth Amendment declares, among other things, that no person "shall be compelled in any criminal case to be a witness against himself." And the same article also declares that no person shall be deprived of property "without due process of law."

It may be remarked in passing, as the courts have frequently pointed out, that the unreasonable searches and seizures prohibited by the Fourth Amendment are almost always made to obtain evidence and thus indirectly, in a criminal case, compel a man to give evidence against himself which in that class of cases is condemned in the Fifth Amendment. The two amendments in this respect "run almost into each other." But the historical explanation of the two amendments is quite distinct. The Fourth Amendment can be traced to an agitation which was carried on in the eighteenth century, and especially the agitation of John Wilkes and the famous decision of Lord Camden hereinafter more fully referred to. The Fifth Amendment is traced back to an agitation conducted in the sixteenth and seventeenth centuries and especially to the agitation of "Freeborn John" Lilburn.

[2] The Fourth Amendment is justly regarded as one of the most important amendments to the Constitution. It recognizes the ·right of the people to be secure in their persons, houses, and effects against unreasonable searches and seizures. The right was not created by the Constitution. It existed as a common-law right before the Constitution was adopted. The amendment, however, established it as a constitutional right which Congress itself cannot violate. Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746. The Constitutions of the several states generally contain the same or similar restrictions upon the powers of the governments of the states.

The framers of these constitutional provisions do not undertake to define what searches and seizures are reasonable and what unreason-

able. But the intention plainly was to protect the people from unreasonable searches and seizures such as had been practiced in England under general warrants, and, to some extent, in this country in colonial times under so-called writs of assistance. Such searches and seizures the courts held illegal at common law. And the constitutional provision was designed to operate on legislative bodies so as to render ineffectual any attempt by such bodies to legalize by statute what the common law regarded as unlawful because unreasonable. It was also intended to operate upon executives and courts, and to make it the duty of the courts to hold invalid every unreasonable search and seizure whether made under the guise of legislative sanction or without the color of any such sanction. Williams v. State, 100 Ga. 511, 520, 28 S. E. 624, 39 L. R. A. 269.

[3] A search of one's person or premises with a view to the discovery of some evidence of guilt which may be used in the prosecution of a criminal action is unreasonable if it is made without authority of law. So that it becomes necessary to inquire in any particular case whether the search was made by authority of law. For it is well established that in some cases the law authorizes searches without warrant, while in others searches made even under a warrant may be without authority of law. If a search is made under authority of law, it is reasonable. If it is not so made, it is unreasonable.

[4] It is the general understanding that the purpose of the Fourth Amendment was to prevent any attempt by legislation or otherwise to authorize or justify any unlawful search or seizure. The restriction was intended to operate upon the executive, legislative, and judicial departments of the government. But the question whether a search is reasonable or unreasonable within the meaning of the Fourth Amendment is in all cases a judicial question, and no other department of the government by any action it may take can make a search reasonable which the courts regard as "unreasonable." The Circuit Court of Appeals in the Fourth Circuit has held that the Fourth Amendment does not protect a citizen from unreasonable searches except those made or participated in by federal officers or under federal process. Kanellos v. United States, 282 Fed. 461; Kirkley v. United States (C. C. A.) 283 Fed. 34. And a like doctrine is asserted by the Circuit Court of Appeals in the Eighth Circuit in Youngblood v. United States, 266 Fed. 795. See, also, United States v. Burnside (D. C.) 273 Fed. 603. In the instant case the search was made by federal agents.

[5] The general rule is well established that there is no right to search a man's premises and seize his possessions without a search warrant, and that the warrant cannot issue, or if issued is invalid if the search authorized is an unreasonable one, being contrary to law.

That the right to search for and seize private papers even under a search warrant was unknown to the common law seems conclusively shown by Lord Camden's opinion in the well-known case of Entick v. Carrington, 19 Howell's State· Trials, 1029, s. c. 2 Wils. 275, decided in 1765, in the Court of King's Bench. This right of search and seizure under warrant had been asserted and exercised for a long time before during the arbitrary reigns of the Stuarts and for a long time after-

wards. Lord Halifax, Secretary of State, accordingly claimed the right in Entick v. Carrington, and the matter was fully and elaborately considered by the court in that case and it was unanimously held that no such right existed, and that it was not supported "by one single citation from any law book extant." The question involved in that case was not whether the papers could be seized without a warrant, for the papers had been taken under a warrant, but was whether the warrant could issue for such a purpose. Counsel claimed that the power to issue the warrant was contrary to the genuis of the law of England, and that however frequently such warrants had been used since the Revolution that fact did not make them lawful, and that the practice of issuing them originated in the oppression and extortion of lords and great men, and that custom went "no further back than 80 years." And counsel declared:

"Most amazing it is they have never before this time been opposed or controverted, considering the great men that have presided in the King's Bench since that time."

The court held that there was no power even in the Secretary of State to issue the warrant, and that it was "wholly illegal and void." An attempt having been made by counsel to justify the seizure by referring to the practice for the search and seizure of stolen goods which was then well established, Lord Camden called attention to the fact that the right of search for stolen goods had crept into English law by imperceptible practice, and that Lord Coke denied its legality. It is important too to note that in searching for stolen goods a search warrant was required and that there must be an oath by the owner that his goods have been stolen and that he has strong reason to believe they are concealed in the place to be searched. The law as laid down in Entick v. Carrington has been regarded ever since as settled and Lord Camden's great judgment is one of the landmarks of English liberty. Justice Bradley speaking of it in the Supreme Court in 1885 in Boyd v. United States, 116 U. S. 616, 626, 6 Sup. Ct. 524, 530 (29 L. Ed. 746), said:

"It is regarded as one of the permanent monuments of the British Constitution, and is quoted as such by the English authorities on that subject down to the present time."

The use of search warrants is confined to cases of public prosecutions, instituted for the suppression of crime or the detection and punishment of criminals. In such cases their legality has long been recognized as established on the ground of public necessity. In Adams v. New York, 192 U. S. 585, 598, 24 Sup. Ct. 372, 375 (48 L. Ed. 575), the court said:

"The right to issue a search warrant to discover stolen property or the means of committing crimes, is too long established to require discussion. The right of seizure of lottery tickets and gambling devices, such as policy slips, under such warrants, requires no argument to sustain it at this day."

The doubts which at one time were entertained as to the search of a man's premises for stolen goods, for lottery tickets, gambling devices, and the like, have not gone to the right to make the seizure without a warrant, but as to whether the right existed to issue a warrant

authorizing the invasion of the premises to make a search for such a purpose.

But it is interesting to observe that the courts have held that a statute authorizing a magistrate or judicial tribunal to issue a search warrant which can be availed of by individuals in the course of civil proceedings is unconstitutional, being in violation of the fundamental principle that every citizen is entitled to be free from all unreasonable searches of his houses and possessions. Robinson v. Richardson, 13 Gray (Mass.) 454. And the constitutionality of statutes authorizing the issuance of warrants to search for intoxicating liquors illegally kept for sale have been challenged in the courts. In State v. Stoffels, 89 Minn. 205, 94 N. W. 675, it was said:

"No one questions the validity of laws providing for the issuing of warrants for the search, seizure, and destruction of implements of gaming, lottery tickets, and obscene books, and other similar articles and means of crime. But it has been questioned by some courts whether intoxicating liquors are property of such character as to be subject to the application of this rule. They do not per se fall within the rule, but on principle, and the great weight of judicial authority, it must be held that when they are kept for sale in violation of the laws of the state, and are intended to be used as the subject or means of crime, it is a question solely for the lawmaking power to determine whether they ought to be subjected to the rule we have stated. Therefore statutes authorizing the issuance of search warrants to search for intoxicating liquors illegally kept for sale, and directing their seizure when found, and their forfeiture or destruction, are constitutional."

See, too, State v. Hanson, 114 Minn. 136, 130 N. W. 79.

In what has been said it appears that the common law jealously protected even against search warrants a man's immunity in his home against "the prying eyes" of government. It led Chatham in his speech on General Warrants to declare in a familiar passage:

"The poorest man may, in his cottage, bid defiance to all the forces of the crown. It may be frail; its roof may shake; the wind may blow through it; the storm may enter; the rain may enter; but the king of England may not enter; all his force dares not cross the threshold of the ruined tenement."

And the maxim that "every man's house is his castle" has been made a part of our constitutional law which no officer of the government of the United States can violate.

[6] Not all arrests without a warrant are illegal, and not all searches and seizures without a warrant are prohibited. "But it is nowhere said, that there shall be no arrest without warrant. To have said so would have endangered the safety of society. The felon who is seen to commit murder or robbery, must be arrested on the spot or suffered to escape." Wakely v. Hart, 6 Bin. (Pa.) 316. However, an arrest without a warrant has never been lawful except in cases where the public security requires it.

It is universally recognized that a peace officer has the right to arrest without a warrant one whom he finds attempting to commit a felony in his presence, or who is committing or has committed a felony in his presence or within his view. Kurtz v. Moffitt, 115 U. S. 487, 6 Sup. Ct. 148, 29 L. Ed. 458. And this rule applies to any offense punishable by imprisonment in a state prison. And it is a general rule that the officer may arrest without a warrant for a misdemeanor com-

mitted in his presence. And an officer at common law may arrest without a warrant one whom he has reasonable or probable grounds to suspect of having committed a felony.

Under the federal as well as the state statutes to justify search and seizure or arrest without warrant the officer must have direct knowledge through his hearing, sight, or other sense of the commission of the crime. Elrod v. Moss (C. C. A.) 278 Fed. 123, 130.

The rule as to when a crime is committed in the presence of an officer is well stated in Ex parte Morrill (C. C.) 35 Fed. 261, 267, where Judge Deady held that—

"A crime is committed in the presence of the officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him, probable cause to believe or reasonable ground to suspect, that such is the case. It is not necessary, therefore, that the officer should be an eye or an ear witness of every fact and circumstance involved in the charge, or necessary to the commission of the crime."

And it is well settled that where an officer is apprised by any of his senses that a crime is being committed in his presence he may arrest without a warrant. 4 Blackstone's Comm. p. 299; 1 Bishop, Crim. Proc. §§ 166–171, 182–184; Bryne Federal Cr. Proc. sec. 10; O'Connor v. United States (D. C.) 281 Fed. 396, 399; McBride v. United States (C. C. A.) 284 Fed. 416, 419. And it is equally true that in such cases an officer may without a warrant enter a building in which the crime is being committed and may search the same. Wharton's Criminal Procedure (10th Ed.) §§ 34, 51. And in the case at bar it is not denied that the agents of the government had such direct knowledge of the commission of the crime as justified the arrest of the defendants without a warrant and a search of their persons without a warrant.

[7] In the cases in which an officer may make an arrest without a warrant he may without a warrant search the person so arrested. For it is the duty of an officer, making a lawful arrest, to search the person and take from him any articles that may be used in evidence against him. Wharton's Cr. Plead. § 60; Roscoe's Cr. Evid. 211; 2 Am. & Eng. Encyc. of Law, 860.

In 25 Am. & Eng. Encyc. of Law, 149, it is laid down that—

"No distinction is observed between an unauthorized search of the person and one which merely involves an invasion of the citizen's constitutional right to be secure in his house, papers and effects, for none is recognized either by the federal or state constitutions; the right to be secure in the lawful possession and enjoyment of property being regarded as no less sacred than the citizen's right to an immunity from an unreasonable search of his person."

We may add that the right to be secure in his property is no more sacred than the right to be secure in his person. And in the cases in which the officer may without a warrant deprive a man of his sacred right to his liberty he may without a warrant deprive him of his no more sacred right of property in the articles that may be used in evidence against him upon the trial for the crime for which he is arrested. His home or his office is no more sacred than his person or his liberty. Such a search and seizure is not, in our opinion, the unreasonable search and seizure which the Fourth Amendment prohibits.

In Ganci v. United States, 287 Fed. 60, decided in this court on January 2, 1923, we held that a search of Ganci's home made without a search warrant was illegal. It is said that that case is decisive of this. But in that case at the time of the entry and search the officers had never seen or heard of Ganci who had committed no crime in their presence. They had arrested Lusco for delivering certain narcotics to one Smith in the officers' presence, and they had some reason to believe that Lusco had obtained them at a certain tenement house to which they saw him go, as they thought, to obtain drugs. After arresting Lusco, who did not mention Ganci, the officers visited the tenement house referred to in which there were a number of separate apartments, one of which was occupied by Ganci. Lusco lived elsewhere. The officers visited each floor of the building making inquiries at each apartment, as they descended, and when they reached the first floor they entered Ganci's premises and the room in which he was lying on his bed. They found a box containing narcotics under a couch which they took possession of and then arrested Ganci. Lusco and Ganci were indicted under the Harrison Act and at the trial the narcotics found under the couch were put in evidence. This court held, Judge Hough dissenting, that the evidence was improperly admitted, it having been illegally seized—as the search and seizure had been made without a warrant. In that case the majority of the court thought that under the circumstances Ganci having committed no crime in the presence of the officers the right to enter and search without a warrant did not exist. It cannot be that upon a suspicion that some one in a hotel or apartment house has unlawful possession of narcotics or liquors the officers can enter without a warrant and examine each guest's room or each tenant's apartment. And even if the officers should obtain a warrant authorizing them to search the hotel or the apartment house generally, can it be supposed that such a warrant would be valid and authorize such a search and seizure as was made in the Ganci Case? That case in its facts is plainly distinguishable from the one at bar. In this case the defendants were all arrested for a crime committed in the agents' presence, and it was Agnello's apartment which alone was searched and from which the cocaine was taken by the officers. In United States v. Mitchell (D. C.) 274 Fed. 128, 131, a search warrant had been issued against an apartment house where a number of families resided. The court referring to it as "an all devouring warrant" declared:

"This of itself is sufficient to condemn it, as it was never claimed that the whole premises should be searched."

In Silverthorne Lumber Co. v. United States, 251 U. S. 385, 40 Sup. Ct. 182, 64 L. Ed. 319, after an arrest of the two Silverthornes at their home, the officers of the government went to the office of the Silverthorne Lumber Company and took possession of all the books, papers, and documents found there and removed them to the office of the district attorney. This search and removal was not made under the authority of a search warrant. As no crime had been committed in the presence of the officers they had no right to make a search without a warrant. The mere fact of the arrest of a person for a crime not com-

mitted in an officer's presence certainly gives no right to search his house or his office without a warrant. That case is not at all decisive of the one now before the court, as in this case the crime was one committed in the presence of the agents of the government who made the arrest and search.

We may refer to a few recent cases in which the courts have upheld the right to search the premises where a crime was committed in the presence of the officers.

In Herine v. United States (C. C. A.) 276 Fed. 806, certain police officers of the city of San Francisco having been informed that the peace and quiet of people were being disturbed by loud and boisterous noise in a certain apartment in that city went to the place and heard the boisterous noises, and going to the room found the doors open and saw bottles of intoxicating liquors on the table and glasses. They entered the rooms and found a number of men and women therein, "all of whom were drunk and noisy, boisterous and disturbing the peace." They found there numerous bottles and kegs containing sherry and port wine, and the defendant told the officers he was selling the wine for 25 cents per drink. Thereupon they placed the defendant under arrest and took possession of the liquor. The seizure of the liquor under such circumstances, without a warrant, was held by the Circuit Court of Appeals for the Ninth Circuit not to violate the Fourth Amendment.

The same court in Vachina v. United States, 283 Fed. 35, held that where a bottle and demijohn containing intoxicating liquor unlawfully in defendant's possession were in plain sight when officers entered a kitchen in the rear of his soft drink barroom, the seizure was legal whether or not they had a valid search warrant. The case went upon the theory that the defendant was engaged, in the presence of the officers, in the actual commission of an offense denounced by the law in that he had possession of intoxicating liquor in his place of business, and that the officers without a warrant might in such a case seize the instrument of the crime.

The same court in Kathriner v. United States (C. C. A.) 276 Fed. 808, also held a seizure of intoxicating liquor without a warrant not unlawful. In that case the officers entered a soft drink establishment, formerly a saloon, and found the bartender behind the bar. An officer jumped over the bar and seized liquor found behind the bar. The want of a warrant did not make the seizure unlawful.

In United States v. Hilsinger, 284 Fed. 585, District Judge Peck not only held that prohibition agents were entitled without warrant to seize from a truck intoxicating liquor which was being unlawfully transported, but also held in a thoughtful and well-reasoned opinion that prohibition agents may search a licensed brewery without a warrant and seize liquor unlawfully manufactured therein; the liquor having an alcoholic content in excess of one-half of 1 per cent. And a motion to exclude the liquor from evidence was overruled. The justification of the seizure of the liquor from the truck was based upon the theory that an offense against the United States was being committed in the actual presence of the officers in its unlawful transportation. In that case, however, the right to search the brewery without a warrant was

based upon certain statutory provisions which conferred upon an inspector of the Internal Revenue Department the right to enter in the daytime any building where any objects subject to tax are being made so far as is necessary for the purpose of examining the same, and which invested the agent charged with enforcement of the Prohibition Act (41 Stat. 305) with the powers possessed by the Commissioner of Internal Revenue under section 3177 of the Revised Statutes (Comp. St. § 5900).

In McBride v. United States (C. C. A.) 284 Fed. 416, the officers went on the premises without a search warrant and seized a still. They justified their entry and seizure on the ground that they entered the stable after smelling fumes of whisky then being made in violation of law and that they then seized the property as forfeited to the United States. The Circuit Court of Appeals for the Fifth Circuit held that when an officer is apprised by any of his senses that a crime is being committed, it is being committed in his presence, and that the search and seizure in this case were therefore legal. See Lambert v. United States (C. C. A.) 282 Fed. 413; Bell v. United States (C. C. A.) 285 Fed. 145.

In People v. Cona, 180 Mich. 641, 147 N. W. 525, the defendant was arrested for a murder committed on the street in the presence of an officer. The defendant at the time of his crime fled and was later arrested in his home. At the trial a policeman gave evidence to the effect that he found two revolvers in a sewing machine drawer in the house in which the defendant was arrested. It was claimed that the seizure of the revolvers was in violation of the federal Constitution, citing Weeks v. United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, L. R. A. 1915B, 834, Ann. Cas. 1915C, 1177. The court did not point out in its opinion that the restriction in the federal Constitution has no application to state officers although it said that a reading of the opinion in the Weeks Case made it apparent that the principles which that case laid down were without application to the case then before the court. The objection raised was disposed of by saying that a reading of the opinion in Weeks v. United States, supra, "makes it apparent that the principles there announced and relied upon by the defendant are not applicable in the case at bar." The court sustained the legality of the seizure of the revolvers, citing Smith v. Jerome, 47 Misc. Rep. 22, 93 N. Y. Supp. 202, quoting therefrom the following passage:

"The police have the power and it is also their duty to search the person of one lawfully arrested, and also the room or place in which he is arrested, and also any other place to which they can get lawful access, for the articles that may be used in evidence to prove the charge on which he is arrested."

Judge Gaynor in his opinion in the New York case comments on the fact that the authorities on the subject seem to be few, and adds that it is "only because the thing has seldom if ever been questioned."

[8] Whether a search or seizure in a criminal case is or is not unreasonable must necessarily be determined according to the facts and circumstances of the particular case. In the instant case we think that what the defendants did in the presence of the agents of the government was sufficient to justify not only the arrest and search of their

persons and that it also constituted such probable cause as justified the search of the home of one of them under the circumstances disclosed.

[9] In the case at bar, as we have seen, the persons making the arrest were apprised by what they saw that a crime was being committed in their presence, they made the arrests without a warrant, and they made immediate search of the persons they had placed under arrest, and thereafter immediate search was made of the room of one of the arrested persons, Frank Agnello, to whose premises Centerino, one of the defendants, had gone a short time before after telling one of the government's agents that he did not have the cocaine but would have to go and get it. Centerino in about five minutes came out of Agnello's premises, at No. 167 Columbia street, accompanied by the two Agnellos and Pace. They went directly to Alba's house, Alba having remained there. The agents looking through the window in Alba's house saw all the defendants sitting around the table and upon it the packages of cocaine. The arrests followed and then the search of the persons arrested and the search of Frank Agnello's premises, where they found and took possession of the can of cocaine which was offered in evidence. The agents had such direct and personal knowledge and such probable cause as justified the search of the premises of Agnello—as fully as it did the search of his person.

Before concluding this opinion we may call attention to the fact that United States marshals and their deputies have in each state the same powers in executing the laws of the United States as the sheriffs and their deputies in each state have by law in executing the laws thereof. U. S. Rev. St. § 788 (Comp. St. § 1312). The statute invests the marshal and his deputies in his district with all the powers, common-law and statutory, which a sheriff and his deputies have in the state in which his district lies. Carico v. Wilmore (D. C.) 51 Fed. 196, 199.

The Code of Criminal Procedure of the State of New York, § 177, provides that a peace officer may, without a warrant, arrest a person:

1. For a crime committed or attempted in his presence.

2. When the person arrested has committed a felony, although not in his presence.

3. When a felony has in fact been committed, and he has reasonable cause for believing the person to be arrested to have committed it.

These provisions are in accord with the rule at common law. See People ex rel. Kingsley v. Pratt, 22 Hun (N. Y.) 300, 301.

The same Code, in section 183, also provides that a private person may arrest another in the following cases:

1. For a crime committed or attempted in his presence;

2. When the person arrested has committed a felony, although not in his presence.

And this appears to have been the law of New York irrespective of statute. See Holley v. Mix, 3 Wend. 353, 20 Am. Dec. 702 (1829).

[10] The defendants herein were not, however, arrested by the United States marshal or any of his deputies. The persons by whom they were placed under arrest and who searched the premises of the defendant Frank Agnello and took possession of the can of cocaine seem to have been agents of the Commissioner of Internal Revenue, and as such we are not aware that they possess any special authority

to make arrests. But a private person under the common law has a right, and it is his duty, to make an arrest without a warrant in certain cases. A private person has the same right as an officer to arrest without a warrant if a felony is committed in his presence. Rex v. Howarth, 1 Moody, C. C. 207; People v. Governale, 193 N. Y. 581, 86 N. E. 554; Brooks v. Commonwealth, 61 Pa. 352, 100 Am. Dec. 645; State v. Mowry, 37 Kan. 369, 15 Pac. 282; Kennedy v. State, 107 Ind. 144, 6 N. E. 305, 57 Am. Rep. 99; Kercheval v. State, 46 Ind. 120. And in the cases in which a private person can arrest without a warrant, he is entitled to make a search of his person and, if probable cause exists, of his premises, also without a warrant. As a private person has the same power as a peace officer to make an arrest, if the crime has been actually committed in his presence, and it is not disputed that in the case at bar the crime was committed in the presence of those who made the arrest, the cases to which we have referred in the course of this opinion sustaining the right of a peace officer to arrest and search without a warrant where the crime is committed in the presence of the officer are, of course, applicable to the facts of this case although the persons making the arrest and search may have in such matters no greater rights than those possessed by any other private citizen in whose presence a crime is committed.

Judgment affirmed.

HOUGH, Circuit Judge (concurring). [11] In result I agree with Judge ROGERS, but cannot follow the reasoning by which result is reached.

The constitutional rule is simple in form, and single in statement, there are no subheads and no exceptions. That the right of the people to be secure in their houses and effects against unreasonable searches and seizures shall not be violated, is the rule.

As the expression of one excludes the other, there is no right in the people to be secure from reasonable searches and seizures. Consequently the only question in every case is whether under the evidence there was unreasonable action.

Unreasonableness is matter of fact, although it is also one of those fact questions which, because it has been decided by generations of judges instead of being left to juries, is commonly called a question of law.

To say that a man may be searched after arrest, though not before, or that a place or house may be searched when a crime is there seen to be committed, and not otherwise, is to introduce false standards; the fundamental question always remains: Was the search or seizure unreasonable? The arrest is no more than some evidence that suspicion came near enough to certainty to make both arrest and search reasonable. If it appeared, however, that the arrest was only for the purpose of search, the evidence would be overwhelming that the whole procedure was unreasonable, unconstitutional, and actionable.

To say that a crime was seen to be committed is but saying that the observer became a competent witness to prove criminal act and intent. Undoubtedly the phrase has been used so long that it has acquired a technical meaning, to wit, acquisition by a peace officer,

through one of his senses, of knowledge of facts which in reasonable men induce belief that crime was committed.

An officer who hears an explosion as of firearms in a residence and at once sees a man leave the building, one who smells liquor in a house and sees one behaving as proprietor thereof, or who by any sense becomes aware of phenomena reasonably suggestive of crime and a criminal, may arrest and search; that it finally appears that no crime was committed may not, and usually does not, render either arrest or search unreasonable.

In the present case the matters seen and heard by the officers were most persuasive of crime committed; arrests were fully warranted and so was search, not only of the place or house in which defendants met, but of any other place reasonably indicated by surrounding circumstances as containing incriminating matter. No. 167 Columbia street was emphatically such a place; incriminating evidence was there discovered; and since it was the result of a reasonable search and seizure, it was properly admitted in evidence.

The foregoing train of thought led to my dissent with the Ganci Case. The more that proceeding is examined, the more it resembles this in every essential particular. In each a probable, almost certain criminal was seen to leave a certain house, in each the criminal transfer or sale was watched, in each the house left by the criminal was searched, and in each incriminating evidence of the crime observed was found. The only difference is that the Ganci search revealed an additional criminal, who naturally complained about it. But the difference is immaterial. Consequently I am unable to differentiate between that case and this; for the single question is as to reasonableness.